## TOCCO v MARQUETTE PRISON WARDEN

Docket No. 60692. Submitted August 3, 1982, at Grand Rapids.—
Decided February 23, 1983.

Joseph M. Tocco, an inmate of Marquette Branch Prison, was
found guilty of rioting by a Department of Corrections hearing
officer. Tocco filed suit for judicial review in Marquette Circuit
Court, seeking to overturn the hearing officer's decision. The
court, John E. McDonald, J., affirmed the decision of the
hearing officer. Plaintiff appeals. *Held:*

1. Plaintiff was denied access to relevant documents which he
had requested prior to the misconduct hearing at which he was
found guilty of rioting. The denial of access to evidence was a
statutory violation which resulted in prejudice to plaintiff and
requires reversal of the hearing officer's finding of guilt.

2. Plaintiff's remaining allegations of procedural error in the
hearing process are without merit.

3. There was substantial evidence that plaintiff committed
the violation with which he was charged. The decision of the
hearing officer will not be set aside on the basis that it was not
supported by competent, material, and substantial evidence on
the whole record.

4. The judgment of the hearing officer is reversed and the
matter is remanded for a new hearing.

Reversed and remanded.

1. Prisons and Prisoners — Prison Disciplinary Hearings — Ad-
ministrative Law — Administrative Procedures Act.·

Prison disciplinary hearings are contested cases for the purposes
of the Administrative Procedures Act and, while the APA
provisions governing procedure in contested cases do not apply
to such hearings, the judicial review provisions of the APA do
apply (MCL 24.306, 791.255; MSA 3.560[206], 28.2320[55]).

References for Points in Headnotes
[1-3] 2 Am Jur 2d, Administrative Law § 397 *et seq.*
    60 Am Jur 2d, Penal and Correctional Institutions §§ 41, 42.
[4] 2 Am Jur 2d, Administrative Law §§ 621, 659, 689.

2. PRISONS AND PRISONERS — PRISON DISCIPLINARY HEARINGS.

    A prisoner in Michigan is entitled to notice and a hearing before being deprived of a right or significant privilege; such a hearing must include: (1) advance written notice of the charges at least 24 hours prior to the disciplinary hearing; (2) a written statement by the factfinder explaining the reason for any disciplinary action, such statement to be supplied to the prisoner; and (3) the opportunity to call witnesses and present documentary evidence, if this would not be unduly hazardous to institutional safety or correctional goals (MCL 791.251 *et seq.;* MSA 28.2320[51] *et seq.).*

3. PRISONS AND PRISONERS — PRISON DISCIPLINARY HEARINGS — ADMINISTRATIVE PROCEDURES ACT — DUE PROCESS.

    A prisoner in Michigan has both a claim actionable under federal law and an independent issue for appellate review under the Michigan Administrative Procedures Act where a prison disciplinary hearing is arguably violative of procedural due process (42 USC 1983; MCL 24.306[1][c]; MSA 3.560[206][1][c]).

4. ADMINISTRATIVE LAW — SUBSTANTIAL EVIDENCE TEST.

    The substantial evidence test used in reviewing an agency's decision requires more than a scintilla of evidence; however, what is required may be substantially less than a preponderance of the evidence.

Joseph M. Tocco, *in propria persona.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *J. Peter Lark,* Assistant Attorney General, Corrections Division, Criminal Appeals Section, for defendant.

Before: V. J. BRENNAN, P.J., and D. E. HOLBROOK, JR., and J. R. ERNST,* JJ.

V. J. BRENNAN, P.J. On June 2, 1981, a hearing officer found plaintiff guilty of rioting, Department of Corrections major rule violation 022. Plaintiff brought this action for judicial review pursuant to MCL 24.301 *et seq.;* MSA 3.560(201) *et seq.,* seek-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing to overturn the hearing officer's decision. The circuit court affirmed the action of the Department of Corrections, and plaintiff appeals as of right.

On May 26, 1981, an inmate riot occurred at the Marquette Branch Prison. A body of approximately 100 to 125 inmates disobeyed repeated orders to return to their cells. When the disturbance was eventually brought under control, a list of the residents forcibly removed from the prison yard was compiled for future identification. Subsequently, a misconduct report issued charging plaintiff with participation in the riot. Specifically, the misconduct report alleged that plaintiff remained in the prison yard during the riot, ignoring an order to disperse and return to the lockup. The report further asserted that it was necessary for members of the prison staff to bodily secure plaintiff and return him to his cell.

Plaintiff claimed that he had been playing handball with other inmates when the riot broke out. He further claimed that he was unable to return to his cell as ordered, because certain armed inmates had threatened to harm anyone complying with the order. The hearing officer found that plaintiff had had an opportunity to return to his cellblock when it was secured by officers but had chosen instead to remain among the rioters. On appeal, plaintiff claims that numerous procedural errors were committed by the hearings division and that the hearing officer's decision was not supported by substantial evidence.

In *Lawrence v Dep't of Corrections,* 88 Mich App 167; 276 NW2d 554, *lv den* 407 Mich 909 (1979), this Court observed that the Department of Corrections is an administrative agency and held that prison disciplinary hearings are "contested cases" for the purposes of the Michigan Administrative

Procedures Act of 1969 (hereinafter MAPA). While the MAPA provisions governing procedure in contested cases do not apply to such hearings, *Penn v Dep't of Corrections,* 100 Mich App 532; 298 NW2d 756 (1980), *lv den* 411 Mich 858 (1981), the judicial review provisions do, MCL 791.255; MSA 28.2320(55). The scope of judicial review under the MAPA is defined by MCL 24.306; MSA 3.560(206), which provides:

"(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

"(b) In excess of the statutory authority or jurisdiction of the agency.

"(c) Made upon unlawful procedure resulting in material prejudice to a party.

"(d) Not supported by competent, material and substantial evidence on the whole record.

"(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

"(f) Affected by other substantial and material error of law.

"(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings."

In *Wolff, Warden v McDonnell,* 418 US 539; 94 S Ct 2963; 41 L Ed 2d 935 (1974), the Supreme Court ruled that a state prisoner was entitled under the Due Process Clause of the Fourteenth Amendment to notice and some kind of hearing in connection with disciplinary determinations involving serious misconduct. *Parshay v Dep't of Corrections,* 61 Mich App 677, 680; 233 NW2d 139 (1975). In *Wolff,*

the prisoner had been faced with a loss of "good time". However, the due process right to a hearing in Michigan has been broadened to encompass any situation in which a prisoner may be "deprived of a right or significant privilege". *DeWalt v Marquette Warden,* 112 Mich App 313, 316; 315 NW2d 584 (1982). Such a hearing must include: (1) advance written notice of the charges at least 24 hours prior to the disciplinary hearing; (2) a written statement by the factfinder explaining the reason for any disciplinary action, such statement to be supplied to the prisoner; and (3) the opportunity to call witnesses and present documentary evidence if this would not be unduly hazardous to institutional safety or correctional goals. *Wolff v McDonnell, supra.* The Michigan Legislature has recently fashioned misconduct hearing procedures designed to comply with the due process mandate of *Wolff v McDonnell.* MCL 791.251 *et seq.;* MSA 28.2320(51) *et seq.,* effective February 1, 1980. Thus, where a hearing is arguably violative of procedural due process, a prisoner has both a claim actionable under 42 USC 1983, *Dickerson v Marquette Warden,* 99 Mich App 630, 636-637; 298 NW2d 841 (1980), and an independent issue for appellate review under the MAPA, MCL 24.306(1)(c); MSA 3.560(206)(1)(c).

Plaintiff's initial complaint is that he was denied access to relevant documents which he had requested, specifically reports and statements of the prison officials mentioned in the May 29, 1981, misconduct report. This report, completed by an official called a "reviewing officer", contains "yes" and "no" boxes which are to be appropriately checked according to whether the resident requests a hearing investigator, witnesses, or relevant documents. The reviewing officer checked the

"no" box under the category of relevant documents. Since plaintiff claims that he directed his request for documents to the hearing investigator, who was not assigned until after the misconduct report was completed, such a request would not appear on the report.

The Hearings Handbook, which contains specific procedural provisions supplementing those of MCL 791.251 *et seq.;* MSA 28.2320(51) *et seq.,* makes the following provisions with regard to inmate access to documents: "This means that a resident who requests a specific document may receive a copy of it if: (1) it is used as evidence at the hearing, even if the hearing officer does not specifically base his/her decision on that document; and, (2) its disclosure does not present a threat to personal or institutional safety." Again, plaintiff's request was for reports and statements of the prison officials mentioned in the misconduct report. A three-page memorandum from Lt. Forstrom, one of these witnesses, became part of the hearings record. This report is dated June 1, 1981, the day before the hearing. Unrebutted allegations in plaintiff's brief indicate that he did not receive a copy of this document; in fact, it appears that plaintiff did not learn of the existence of this report even at the June 2, 1981, hearing.

The statutory provisions governing these hearings, MCL 791.252; MSA 28.2320(52), provide in part:

"(h) * * * [a] hearings officer may deny access to the evidence to a party if the hearings officer determines that access may be dangerous to a witness or disruptive of normal prison operations. The reason for the denial shall be entered into the record."

The Forstrom memorandum was clearly within

the ambit of plaintiff's request; that request was prima facie legitimate because the report appears in a hearing record and must be assumed to have been considered as evidence. No reason appears in the record for denial of access to this report to plaintiff. As previously noted, the MAPA provides that an agency decision may be set aside when "[m]ade upon unlawful procedure resulting in material prejudice to a party". MCL 24.306(1)(c); MSA 3.560(206)(1)(c). A finding of reversible error is further contingent upon a determination that the "substantial rights of the petitioner have been prejudiced". MCL 24.306(1); MSA 3.560(206)(1). We find these requisites satisfied in this case. Consider the following statement from the Forstrom report:

"Two residents then yelled that they wanted to talk to me. I agreed and met residents Tocco and Macklin at the baseball backstop. They were on the south side. I was on the north side. They stated they would go back to their cells but wanted to return to their own cells and not all made to go to G-Unit. I agreed and they wanted ten minutes to talk with the other residents. After ten minutes I talked to the residents again. At this time they asked for news media, complete amnesty with no action against the residents. I informed them, Tocco and Macklin, that I could not give them amnesty or their other demands. At this time they said there is no reason to talk."

The hearing officer could well have concluded from this statement that Tocco was an active participant in the riot, if not a ringleader. Denied access to this report, plaintiff would have no way to anticipate and prepare rebuttal to these allegations. The denial of access to this report, uncontested on appeal and unexplained in the hearing record was, therefore, reversible error. Plaintiff's

remaining allegations of procedural error in the hearings process are without merit.

Plaintiff further asserts that the decision should be set aside as not supported by competent, material, and substantial evidence on the whole record. MCL 24.306(1)(d); MSA 3.560(206)(1)(d); *Viculin v Dep't of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971); *Bloomfield Hills Bd of Ed v Miner,* 113 Mich App 388, 394; 317 NW2d 638 (1982). While the "substantial evidence" test has been held to require more than a scintilla of evidence, it may be substantially less than a preponderance of the evidence. *Meadows v Marquette Prison Warden,* 117 Mich App 794, 798; 324 NW2d 507 (1982). Plaintiff admitted to being in the midst of the riot. His defense was that he had been in the prison yard for a legitimate purpose prior to the beginning of the riot and was afraid to leave the prison yard after the riot erupted. Rebuttal evidence was submitted in the form of an answer given by Lt. Forstrom to written questions submitted by plaintiff: "The armed inmates were driven back and then the others had a chance to go to their cells." This statement, coupled with the attested-to allegations in the misconduct report, constitutes substantial evidence that plaintiff committed the violation.

Because the Forstrom report was a relevant document, the revelation of it, on this record anyway, would not "be dangerous to a prisoner or disruptive of normal prison operations".

The judgment of the hearings division is reversed and the matter is remanded for a new hearing.

Reversed and remanded.