LANSING FIRE FIGHTERS UNION, LOCAL 421,
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO v
CITY OF LANSING

Docket No. 69579. Submitted November 15, 1983, at Lansing.—Decided March 21, 1984.

The City of Lansing hired a nonunion civilian to fill the job of administrative assistant to the chief of the Lansing Fire Department. The job had previously been done by a union member. The city removed the job from bargaining unit work without notice to the union and without granting an opportunity to bargain. The Lansing Fire Fighters Union, Local 421, International Association of Fire Fighters, AFL-CIO, filed an unfair labor practice charge with the Michigan Employment Relations Commission. A hearing officer held that the city had violated the public employment relations act by refusing to negotiate with the collective-bargaining representative of its fire-fighting employees over the unilateral transfer of unit work to a nonunit employee. The hearing officer recommended that this violation be remedied by requiring defendant to negotiate with the bargaining unit concerning wages, hours, and working conditions of the employee currently performing work previously handled by a unit employee. The Employment Relations Commission adopted the hearing officer's findings as to defendant's violation of its duty to bargain under PERA. However, it rejected the recommended remedy. MERC rescinded the decision to remove the work of the administrative assistant position from the bargaining unit. It further ordered that the employee who would have been appointed to fill the position had the

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 617, 683, 684, 688, 689, 691.
[2, 3] 48 Am Jur 2d, Labor and Labor Relations §§ 1101, 1102.
48A Am Jur 2d, Labor and Labor Relations §§ 1769, 1770.
What constitutes unfair labor practice under state public employee relations acts. 9 ALR4th 20.
Bargainable or negotiable issues in state public employment labor relations. 84 ALR3d 242.
Employer's decision to have work done by independent contractors rather than by employees as unfair labor practice. 6 ALR3d 1148.

employer not removed the work from the unit be made whole by an award of back pay. The city appealed. *Held:*

1. It is an unfair labor practice for a public employer to remove work handled by members of a collective-bargaining unit and hire nonmembers to perform the work without reasonable notice to the union and without granting a chance to bargain.

2. The appropriate remedy in cases of a public unilateral removal of bargaining unit work is to return to the *status quo ante:* that is, to return the work to the bargaining unit and award back wages to the employee who would have been assigned to the work had the employer not removed the work from the bargaining unit.

Affirmed.

1. APPEAL — EMPLOYMENT RELATIONS COMMISSION — CONSTITUTIONAL LAW.

The Court of Appeals reviews decisions of the Michigan Employment Relations Commission by determining whether the decision is authorized by law and whether the commission's findings are supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. LABOR RELATIONS — UNFAIR LABOR PRACTICES — PUBLIC EMPLOYEES — REMOVAL OF UNION WORK.

It is an unfair labor practice for a public employer to remove work handled by members of a collective-bargaining unit and hire nonmembers to perform the work without reasonable notice to the union and a chance to bargain.

3. LABOR RELATIONS — REMEDIES — REMOVAL OF UNION WORK.

The appropriate remedy in cases of a public employer's unilateral removal of bargaining unit work is to return to the *status quo ante:* that is, to return the work to the bargaining unit and award back wages to the employees who would have been assigned to the work had the employer not removed the work from the bargaining unit.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *George H. Kruszewski* and *Ronald R. Helveston*), for plaintiffs.

*Miller, Johnson, Snell & Cummiskey* (by *Michael A. Snapper* and *Kenneth L. Jacobs*), for defendant.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and G. R. COOK,* JJ.

G. R. COOK, J. Defendant-appellant, City of Lansing, appeals as of right from a decision of the Michigan Employment Relations Commission (MERC) to affirm in part and modify in part the hearing officer's decision and recommended order. The hearing officer held that defendant had violated § 10(1)(e) of the public employment relations act (PERA), MCL 423.210; MSA 17.455(10), by refusing to negotiate with the collective-bargaining representative of its fire-fighting employees over the unilateral transfer of unit work to nonunit employees. The hearing officer recommended that this violation be remedied by requiring defendant to negotiate with the bargaining unit concerning wages, hours, and working conditions of the employee currently performing work previously handled by a unit employee under the title of administrative assistant VI.

Plaintiff contested the remedy recommended by the hearing officer, asserting that the appropriate remedy required that the administrative assistant position then currently filled by a nonunit, civilian employee be filled by a unit employee who would be compensated for lost wages. Defendant filed cross-exceptions, objecting to the hearing officer's failure to find a waiver of the right to bargain in light of the collective-bargaining agreement and past practices.

MERC adopted the hearing officer's findings as to defendant's violation of its duty to bargain under PERA. However, it rejected the recommended remedy. MERC rescinded the decision to remove the work of the administrative assistant

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

VI position from the bargaining unit. It further ordered that the employee who would have been appointed to fill the position had the employer not removed the work from the unit be made whole by an award of back pay. Defendant appeals from this MERC decision.

The pertinent facts relative to this appeal follow. The original and amended charges were that defendant committed unfair labor practices against the Lansing Fire Fighters in violation of § 10(1), subds (a), (c), and (e) and § 15 of PERA by: (1) refusing to bargain over its decision not to fill the position of administrative assistant VI from within the bargaining unit; (2) by replacing a union employee with an individual outside the bargaining unit, thereby effecting a unilateral change in conditions of employment; (3) by discriminating against the union and Lieutenants Marvin Stump, Jr., and William Wilkins, both bargaining unit members, one of whom, by past practice, would have received the administrative assistant VI position under the collective-bargaining agreement; and (4) by discriminatorily filling the administrative assistant VI position with a nonmember of the bargaining unit due to a desire to remove union influence.

Lieutenants Marvin Stump and William Wilkins both expressed an interest in the position of administrative assistant before it was filled with a nonunion employee. Stump had been secretary-treasurer of the Lansing Fire Fighters Union for 15 years, and Wilkins was a union trustee. Stump had 25-1/2 years of seniority, while Wilkins had 18 years seniority with the fire department. According to Wilkins, Chief Decker informed him that he would not get the position and that he (Decker) would either quit or make the job a civilian posi-

tion if he could not select whom he wanted for the administrative position.

Lieutenant Roger LaLonde testified that he had worked for 17 years with the Lansing Fire Department. In 1978, he filled in at times as administrative assistant even though he was not the most eligible senior person for that position. He explained that the administrative assistant is in charge of personnel, budgeting, payroll, and sick leave. He testified that the duties and the responsibilities of the nonunit employee now filling this position are the same as those of the union member who formerly occupied that position.

The union became apprised of the fact that LaLonde was occasionally filling in for the administrative assistant, and it then filed a grievance because the most "senior man was not the one that was in the office". In October of 1981, Ms. Emerson, a civilian employee, was hired as administrative assistant.

On cross-examination, LaLonde stated that Chief Peter Decker had told him that he was Decker's choice to succeed Larry Smith as administrative assistant because of his qualifications. The salary for the administrative assistant VI was $28,983. At the time, Emerson was paid approximately $19,-000. LaLonde testified that he was a member of the union.

Lieutenant Roland Case testified that he has been employed with the Lansing Fire Department for 28 years. He had been president of the Lansing Fire Fighters Union for nine years and vice-president for four years. He asked Chief Decker why Marvin Stump was not considered for the administrative assistant position. The chief stated that Stump's position with the union would create a conflict of interest if he held the administrative

assistant position. Case filed a grievance on No-
vember 26, 1980, regarding the filling of the ad-
ministrative assistant position during vacation pe-
riods.

· The administrative assistant's position had been
a bargaining unit position as long as Lieutenant
Case had been a member of the fire department.
Minutes from a fire board meeting indicated that
the chief of the Lansing Fire Department stated
that the mayor, along with the chief, recom-
mended that a civilian be hired for this position. A
discussion, however, by members of the fire board
concluded that the position should remain in the
department in accord with the parties' collective-
bargaining agreement and should not be filled by a
civilian.

Lieutenant Case stated that in 1967 there had
been a union strike. Chief Decker was one of 17
out of 252 people who continued to work during
the strike. Chief Decker withdrew from the union
and ceased paying union dues. When he spoke
with the chief regarding Lieutenant Wilkins, the
chief said that if he could not use Lieutenant
LaLonde for the administrative position he would
recommend that the mayor hire a civilian.

Lieutenant Case stated that presently the me-
chanics are civilians and nonunion members. Over
a period of several years, by attrition, mechanic
positions had been filled by civilians as members of
the union left or retired. Further, the supervisor of
the mechanics had previously been a member of
the union. He, however, was replaced by a civilian.
The union, however, did not file a grievance or an
unfair labor practice charge concerning the pro-
cess of converting the mechanics' jobs from bar-
gaining unit positions to nonunit positions. A me-
chanic working on a vehicle is required to be

certified and licensed. There was no one in the bargaining unit qualified, certified, or licensed to work as a mechanic. Further, no union members applied for the positions or complained of their replacement with nonunit members.

Peter Decker testified that he was chief of the department in November, 1978. He stated that the city decided to fill Smith's administrative assistant position with a civilian. The decision was made through the budget process. No one was selected for promotion. It was his opinion that Lieutenant Stump was not qualified for this position because he could not express his opinions. He denied ever having told Lieutenant LaLonde that he would never have a union officer as administrative assistant. He testified that he probably told Lieutenant LaLonde that a possible conflict might result if the person who held that position also held an elected position with the union. He stated that he wanted Lieutenant LaLonde to fill the administrative assistant position and that the civilian, Ms. Emerson, was currently performing the same duties that were performed by Larry Smith.

Stephen Kintz, personnel director for the City of Lansing, testified that, whenever a job became vacant by attrition, an examination was conducted to determine whether or not it should be performed by a civilian. Relative to the administrative assistant position, the mayor's budget review committee recommended that the position be filled with a civilian to save money. The annual salary and retirement savings in hiring a civilian were approximately $14,000. It was the committee's belief that in light of the past practice clause of the agreement and the past practice with the mechanics there would not be a valid objection by the union. He did not discuss the past practice

with the president of the union, however, contrary to the wording of the contract.

We review a MERC decision to determine whether the decision is authorized by law and whether the commission's findings are supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Michigan Educational Support Personnel Ass'n v Evart Public Schools,* 125 Mich App 71; 336 NW2d 235 (1983); *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974).

MERC has previously held that a duty to bargain occurs when a management action removes work formerly handled by the bargaining unit membership to nonmembers of the collective-bargaining unit without reasonable notice to the union and a chance to bargain. *Gibralter School Dist,* 5 MERC Lab Op 338, 341-342 (1970). See, also, *City of Detroit,* 14 MERC Lab Op 704 (1979). In the instant case, defendant concedes that: (1) the transfer of the bargaining unit work was a mandatory subject for bargaining; and (2) that there was no collective bargaining with the union in connection with the transfer. Defendant submits, however, that the union waived its right to demand bargaining by (1) the language of the collective-bargaining agreement and (2) by past practices.

Defendant relies on the case of *Michigan State University,* 13 MERC Lab Op 871 (1978). There, the positions of fire safety officers and safety specialists were switched by the employer from a nonsupervisory clerical and technical bargaining unit to the Michigan State University Administrative and Professional Association Bargaining Unit (A-P). The 1974 collective-bargaining agreement contained a management clause which included

the right to establish, eliminate or change, classify, assign, transfer, promote, demote, or lay off employees. The collective-bargaining agreement also contained a provision which indicated that, by March 1, 1975, a joint university/association committee would be established to advise and review the classification descriptions. This was to be completed by June 30, 1976. The fire safety officer position listed in the 1974 collective-bargaining agreement was not listed in the October 1, 1976, collective-bargaining agreement. In August, 1976, the employer switched the fire safety position to the A-P unit. In a two-year period of time, the employer similarly transferred approximately 30 other positions without advance notice or bargaining with the union. In August, 1976, the union learned of the change and filed a grievance. The question presented for the hearing officer in that case was whether the employer had unilaterally and arbitrarily removed the position of fire safety officer from the union's bargaining unit. The hearing officer noted that: (1) the 1974 collective-bargaining agreement's language permitted the university to "eliminate or change classification" and to "assign" and "transfer" employees; (2) the 1976 collective-bargaining agreement did not include these positions; and (3) transfers had been done in the past and the positions of fire safety officer and safety specialist transferred to the A-P unit were renamed fire safety inspector and occupational safety inspector respectively.

The hearing officer in *Michigan State University* determined that "the union with sufficient clarity and specificity waived its right to bargain about the elimination of the fire safety officer position from its bargaining unit". This holding was premised on the contract clauses, on past practices, and

on surrounding circumstances. It found that the union had acquiesced in the study and revision of the classifications and "apparently agreed to its transfer to the A-P unit without objection". *Michigan State University, supra,* p 882. MERC adopted the hearing officer's recommendation in *Michigan State University* and determined that there was evidence to conclude that the union waived its rights.

In the instant case the hearing officer and MERC both considered, but distinguished, *Michigan State University.* MERC determined that the evidence in this case failed to sufficiently demonstrate a waiver of the right to bargain on unit work as the mechanics' work which had been unilaterally removed from the union required skills not possessed by members of the bargaining unit.

We agree with MERC and the hearing officer that *Michigan State University* is persuasively distinguishable from the instant case. Apart from the distinction relied upon by MERC, *Michigan State University* involved the transfer of a position from one bargaining unit to another bargaining unit. The instant case, however, involves a transfer of work away from any union bargaining unit.

Moreover, in *Centerline School Dist,* 17 MERC Lab Op 756 (1982), the collective-bargaining agreement permitted the employer to "assign teachers", "make improvements in the instructional program" and "to determine the educational program". Nonetheless, in *Centerline,* MERC cited *City of Detroit, supra,* for holding that "assign" did not permit the employer to unilaterally transfer unit work out of the bargaining unit by assigning it to a nonunion employee.

Defendants further contend that Article II, a

management's rights clause, reserves to the city all powers, rights, and authority unless limited by the agreement. When Article II, subd (h) (which requires the city to bargain over wages and rates for new classifications) is read in conjunction with Article II, subds (a), (e), and (g), the implication is that there is a duty to bargain over rates when reclassified work remains in the unit. Conversely, defendant avers that the clause waives the duty to bargain when work is classified outside of the unit.

Defendant's argument fails since a waiver must be clear and unmistakable. *Centerline School Dist, supra.* We find that the contractual clause upon which plaintiff relies is not sufficiently clear to constitute a waiver of the union's right to bargain over the transfer or classification of positions outside the bargaining unit.

Defendant also contends that the management's rights clause in conjunction with the past practice section of the collective-bargaining agreement constitutes a waiver. Art XX, subd (4) of the parties' agreement provides in pertinent part:

"Both the City and the Union subscribe to the principal *[sic]* that this contract should be the complete agreement between the parties.

"The parties, however, recognize that it is most difficult to enumerate in an agreement practices inherent in a relationship of many years duration.

"If any claimed understanding, agreement, or past practice comes to the attention of either party during the life of this Agreement which is not covered by this Agreement, the parties shall meet at a mutually convenient time to discuss the problem and negotiate a mutually satisfactory conclusion * * *."

Defendant asserts that the unprotested transfer of mechanics to nonunit civilian positions consti-

tutes a waiver by past practice under article XX, subd (4). We disagree. The evidence established that only the positions of mechanic and mechanic supervisor were transferred outside the bargaining unit without protest by the union. Adoption of defendant's argument would in effect nullify the union's right to bargain over any future transfers of unit positions to nonunit employees. This would be totally contrary to the intent and purpose of a union. Rather, the failure to bargain or protest over the mechanics positions should be viewed as waiving only the right to future protest over those specific positions, *i.e.,* mechanics and mechanic supervisors. We conclude, as did the hearing officer and MERC, that defendant committed an unfair labor practice by unilaterally hiring a nonunit civilian without bargaining with the union.

The next issue concerns the appropriate remedy to rectify the unfair labor practice. The hearing officer's remedy required the employer to bargain with the union concerning wages, hours, and working conditions of the civilian employee currently performing work which was previously performed by a member of the Lansing Fire Fighters Union. This was premised on the fact that the contract gave the employer the right to discontinue classifications *within* the unit, combine and create new classifications, and to establish wage rates for new or changed classifications after discussion with the union. As MERC noted, however, this remedy ignores the fact that, while the collective-bargaining agreement allows for reclassification within the unit, the hearing officer decided that the unilateral transfer of work outside the unit constituted an unfair labor practice.

In fashioning his remedy, the hearing officer relied upon *City of Kalamazoo,* 11 MERC Lab Op 854 (1976). However, that case clearly presents a

different scenario from that posed here. In *City of Kalamazoo,* MERC held that the parties' contract, which allowed for the establishment of new classifications, permitted management to create a new category of public service officers without arrest powers who performed a limited number of the duties formerly performed by sworn police officers. Here, however, no new classification was created. Instead, the administrative position was simply transferred outside the bargaining unit, while the position's title and duties were unchanged.

MERC held that the appropriate remedy in a case of a unilateral removal of bargaining unit work is the return to the *status quo ante.* It, therefore, ordered the employer to: (1) rescind the decision to remove the work of the administrative assistant VI position from the unit; (2) return the work to the unit; and (3) make whole by an award of back wages the individual who would have been appointed to the administrative assistant VI position had the employer not removed this work outside of the unit.

Defendant claims that the remedy fashioned by MERC is inconsistent with a violation of PERA. The thrust of this argument centers upon when the unlawful act occurred. Defendant contends that, since MERC's decision and order is not specific on this point, it therefore adopted the hearing officer's findings relative to this issue. Defendant, therefore, asserts that the first unlawful act under PERA was treating the new position as a nonunit position by not bargaining with the unit over wages, hours, and conditions of the civilian.

MERC specifically dealt with the hearing officer's proposed remedy, finding the unlawful practice to be the defendant's unilateral removal of work from the bargaining unit and not the em-

ployer's refusal to bargain with the unit concerning wages, hours, and working conditions of the civilian replacement. Defendant's argument also fails as its focus is on the erroneous assumption that the employer lawfully transferred a unit position to a nonunit civilian.

MERC relied upon *Centerline School Dist,* 17 MERC Lab Op 756 (1982), where certain functions previously performed by professional unit librarians were transferred to nonunit library technicians without bargaining over the decision with the union. MERC held that it was unlawful for the school district to unilaterally transfer unit work outside of the bargaining unit by assigning it to a nonunit employee. It initially ordered the employer to bargain concerning the terms and conditions of all employees performing bargaining unit work. Subsequently, it modified this order upon a motion for reconsideration, *Centerline School Dist,* 1983 MERC Lab Op 30, where it held:

"In accord with the discussion below, we modify our order of June 1, 1982, to require respondent to rescind, pending satisfaction of its bargaining obligation, its decision to eliminate the two librarian positions and remove their work from the unit. Respondent is also ordered to offer reinstatement to members of charging party's bargaining unit laid off as a result of the unlawful unilateral action, and to make these employees whole for losses they may have suffered as a result of the unlawful action." *Centerline School Dist, supra,* pp 32-33.

In its modification, MERC analogized to cases where an employer had unlawfully transferred unit work outside the unit and was ordered to bargain with the union over employees to whom work had been assigned. See *Gibralter School Dist, supra,* p 33; *City of Kalamazoo, supra; City of*

*Grand Rapids,* 13 MERC Lab Op 468 (1978); *Washtenaw County Bd of Comm'rs,* 16 MERC Lab Op 190 (1981). It also analogized to cases where this unlawful practice was remedied by rescinding the action which resulted in the unlawful transfer, pending satisfaction of the bargaining obligation. See *City of Detroit, Police Dep't,* 15 MERC Lab Op 663 (1980); *Ottawa Area Intermediate Schools,* 15 MERC Lab Op 1003 (1980). After reviewing decisions granting bargaining-order type remedies and *status quo ante* remedies, MERC concluded that the former remedy is inadequate to rectify a unilateral removal, especially where this remedy has not been requested. MERC further determined that restoration of the status quo required rescission of the decision to eliminate the bargaining unit positions, the reinstatement of laid-off employees, and to make these employees whole for lost pay.

Defendant contends that MERC's reliance on *Centerline* is misplaced since its remedy does not apply to instances where the employer has a contractual right to eliminate and change classifications. Defendant overlooks the fact that both the hearing officer and MERC deemed the unilateral removal of the position outside the unit unlawful. Therefore, the employer did not have a contractual right to eliminate and change classifications to those outside of the bargaining unit.

Defendant also attempts to distinguish *Centerline* because it relies upon cases involving subcontracting situations. *Centerline* itself, however, did not involve the subcontracting of the library positions. We find the remedy fashioned by MERC in *Centerline* appropriate here.

Defendant additionally asserts that the remedy fashioned by MERC would impose undue hardship

upon the city, citing *Van Buren School Dist,* 8 MERC Lab Op 714 (1973), *aff'd* 61 Mich App 6; 232 NW2d 278 (1975), where *Fibreboard Paper Products Corp v National Labor Relations Bd,* 379 US 203; 85 S Ct 398; 13 L Ed 2d 233 (1964), was cited for the proposition that a *status quo ante* remedy should not significantly abridge the employer's freedom to manage its business. Defendant contends that the enforcement of this remedy in the instant case would destroy the city's contractual right to change and classify and would, in effect, freeze all existing job classifications. As plaintiffs point out, MERC held that "after a return to the status quo has been accomplished, the employer may choose to fill the position with the unit member and take any other action permitted by the contract such as eliminating or combining job duties". Therefore, we hold the city's position would not be "significantly abridged".

Finally, in *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975), bus drivers were bargaining unit members since 1956. In 1972, the school district, however, subcontracted the bussing of its students. The union filed an unfair labor practice alleging a violation of § 10, subds (a) and (e) of PERA. MERC ordered Van Buren to remedy the unlawful labor practice by: (1) rescinding the subcontracting contract and reinstating services as they existed prior to the unlawful subcontracting; (2) offering reinstatement and back pay to former employees; and (3) bargaining upon request with the union regarding the subcontract of bargaining unit work. This Court deferred to MERC's broad discretionary power, concluding:

"The status quo *ante* remedy imposed here is designed to return the parties to the bargaining positions

they were in before the unfair labor practices were engaged in, in full recognition of the fact that in order to make the duty to bargain meaningful there must be something to bargain about. This remedy was upheld in *Fibreboard* itself as 'well designed to promote the policies of the [NLRA].' *Fibreboard, supra,* p 216." 61 Mich App 33.

To award the remedy sought by the city in the instant case would similarly allow the employer to enjoy the fruits of its unlawful conduct. As the union asserts, this would not place the parties in the position they were in before the unlawful act occurred. The civilian would still maintain the position of administrative assistant. The only difference would be that the union could bargain relative to the wages, hours, and conditions of employment of that nonunit employee.

In conclusion, we hold that there was no waiver by past practice nor did the management's rights clause create a waiver of the union's right to bargain over the unilateral transfer of unit work to a nonunit employee. Thus, there was an unfair labor practice. The applicable remedy is that determined by MERC to: (1) rescind the decision to remove the work of the administrative assistant VI from the unit, (2) return the work to the unit, and (3) make whole the individual who would have been appointed to the administrative assistant VI position had the employer not removed the work for loss of pay for the period during which the work was performed outside the unit.

Affirmed.