LOCAL 586, SERVICE EMPLOYEES INTERNATIONAL UNION v
VILLAGE OF UNION CITY

Docket No. 72084. Submitted March 6, 1984, at Grand Rapids.—
Decided June 19, 1984. Leave to appeal applied for.

Local 586, Service Employees International Union, filed a charge
with the Michigan Employment Relations Commission alleging
that the Village of Union City had unilaterally reduced the
work hours of the bargaining unit's employees and had ulti-
mately laid off one employee. MERC found that the unilateral
reduction in work hours was a breach of the employer's duty to
bargain and ordered the employer to cease and desist from
altering the working hours without bargaining and to make
whole the employees for loss of pay suffered as a result of the
reduction. Respondent appealed. *Held:*

1. Issues falling into the category of "wages, hours and other
terms and conditions of employment" are mandatory subjects
of collective bargaining. While the initial decision to lay off
workers is a matter of management prerogative and not a
mandatory subject of bargaining, the impact of such a decision
is an issue for bargaining. Therefore, the respondent had a duty
to bargain over the impact of its decision to reduce its work
force.

2. The employer's duty to bargain is conditioned upon a
request for bargaining from the employees. Here, there was no
showing that the union had requested bargaining over the
decision to impose the partial layoff. Thus, the respondent did
not breach its duty to bargain, and MERC's award of lost wages
was inappropriate.

Affirmed in part, reversed in part.

1. LABOR RELATIONS — PUBLIC EMPLOYERS — COLLECTIVE BARGAINING
— MANDATORY SUBJECTS OF BARGAINING.

Public employers may not refuse to bargain collectively with
their employees' representatives; issues which fall into the
category of "wages, hours and other terms and conditions of

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 48A Am Jur 2d, Labor and Labor Relations §§ 1764, 1770.

employment" are mandatory subjects of bargaining (MCL 423. 210[1][e], 423.215; MSA 17.455[10][1][e], 17.455[15]).

2. Labor Relations — Public Employers — Collective Bargaining — Management Prerogative.

A public employer's initial decision to lay off workers is a matter of management prerogative and is not a mandatory subject of collective bargaining; however, the impact on the employees of such a decision is an issue for bargaining.

3. Labor Relations — Public Employers — Duty to Bargain.

A public employer's duty to bargain collectively with its employees is conditioned upon a request for bargaining from the employees (MCL 423.215; MSA 17.455[15]).

*Marcus, Vander Ploeg, Ruck, Mullally & Wells* (by *Roy J. Portenga),* for Local 586, Service Employees International Union.

*Jacobs & Ward* (by *Michael F. Ward),* for respondent.

Before: MacKenzie, P.J., and J. H. Gillis and J. E. Fitzgerald,* JJ.

Per Curiam. Respondent appeals as of right from a decision of the Michigan Employment Relations Commission (MERC) finding that respondent had committed an unlawful labor practice.

On January 4, 1982, the union filed a charge with the MERC alleging that respondent had unilaterally reduced work hours and changed other terms of employment. A hearing was conducted before hearing officer Bert H. Wicking, who found that respondent's actions were not inspired by anti-union animus and were, therefore, lawful.

After considering the charging party's exceptions to Wicking's recommended order, the MERC found that respondent, in response to a large

* Circuit judge, sitting on the Court of Appeals by assignment.

budget deficit, reduced the work week of four employees "by 8 hours (1 day) for five weeks, and by 16 hours (2 days) for the two weeks following. At the end of the period, [respondent] decided to restore the old schedule and to lay off one employee indefinitely". The MERC agreed with hearing officer Wicking that respondent's actions were not inspired by anti-union animus but held that respondent's unilateral reduction in work hours constituted a breach of its statutory duty to bargain. The MERC ordered respondent to, *inter alia,* "[m]ake whole employees for loss of pay suffered by them as a result of the unlawful unilateral decision to reduce work hours * * *".

The first issue raised in this appeal is whether public employers have a duty to bargain with employees regarding the implementation of a decision to lay off workers.

The Public Employees Relations Act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* forbids public employers to "refuse to bargain collectively". MCL 423.210(1)(e); MSA 17.455(10)(1)(e). This duty is defined in PERA § 15:

"A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, *to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment,* or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached *if requested by either party,* but such obligation does not compel either party to agree to a proposal or require the making of a

concession." MCL 423.215; MSA 17.455(15). (Emphasis added.)

Those issues which fall into the category of "wages, hours and other terms and conditions of employment" have been deemed mandatory subjects of bargaining. *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 54-57; 214 NW2d 803 (1974).

In *Local 1277, AFSCME v Center Line*, 414 Mich 642; 327 NW2d 822 (1982), our Supreme Court held that the initial decision to lay off workers is a matter of management prerogative and is not a mandatory subject of bargaining. The Court also made it clear that the "impact" of such a decision "is an issue for bargaining". *Center Line, supra*, pp 661-665. The Court in *Center Line* cited with approval the case of *Beloit Education Ass'n v Employment Relations Comm*, 73 Wis 2d 43; 242 NW2d 231 (1976), which held that the order in which teachers would be laid off was a mandatory subject for bargaining to the extent that it did not invade the school board's right to determine the curriculum.

The rationale supporting the decision in *Beloit, supra*, is relevant to the case at bar. So long as respondent is able to unilaterally determine which city services are to be reduced, the "management prerogative" has not been invaded. It should make no difference to respondent whether the employees performing the affected services choose to share the burden of the cuts or whether they choose to have their least senior co-workers bear the burden completely. Therefore, we find that respondent has a duty under PERA § 10(1)(e) to bargain over the "impact" of its decision to reduce its work force.

The second issue raised in this appeal is whether respondent has breached this duty to bargain over

the "impact" of its decision to reduce its work force.

PERA § 15, which defines the duty to bargain created by PERA § 10(1)(e), expressly conditions the employer's duty to bargain on there being a request for bargaining from the employees. Analogous federal legislation imposes the requirement that, in order to trigger an employer's duty to bargain, the employees' representative must indicate to the employer a willingness to bargain. In *National Labor Relations Board v Columbian Enameling & Stamping Co*, 306 US 292, 296-297; 59 S Ct 501; 83 L Ed 660 (1939), the Supreme Court stated:

"In appraising these transactions between the conciliators and respondent's president, it is important to bear in mind *the nature and extent of the legal duty imposed upon the employer* by the National Labor Relations Act. Section 8(5) declares that it is an 'unfair labor practice' for an employer *'To refuse to bargain collectively* with the representatives of his employees', and §§ 2 and 10(c) give to the Board an extensive authority to order the employer to cease an unfair labor practice * * *. While the Act thus makes it the employer's duty to bargain with his employees, and failure to perform that duty entails serious consequences to him, *it imposes no like duty on his employees. Since there must be at least two parties to a bargain and to any negotiations for a bargain, it follows that there can be no breach of the statutory duty by the employer—when he has not refused to receive communications from his employees—without some indication given to him by them or their representatives of their desire or willingness to bargain.* In the normal course of transactions between them, willingness of the employees is evidenced by their request, invitation, or expressed desire to bargain, communicated to their employer." (Emphasis added.)

Accord, *National Labor Relations Board v Spun-Jee Corp*, 385 F2d 379, 384 (CA 2, 1967). See generally, 48 Am Jur 2d, Labor and Labor Relations, § 968.

Although the MERC opinion states that respondent has admitted "that it failed to give charging party notice and opportunity to bargain", we find no such admission in the record.

In any event, the MERC's finding that respondent had not given the union notice *and opportunity to bargain* places the duty to seek collective bargaining on the wrong party. In *Columbian Enameling, supra,* p 297, the Supreme Court, when referring to analogous federal legislation, stated:

"However desirable may be the exhibition by the employer of a tolerant and conciliatory spirit in the settlement of labor disputes, we think it plain that *the statute does not compel him to seek out his employees or request their participation in negotiations* for purposes of collective bargaining * * *." (Emphasis added.)

Since the union has not shown that it requested respondent to bargain over its decision to impose a partial layoff, the MERC award of lost wages was inappropriate.

The decision of the MERC is affirmed to the extent that it orders respondent to "[c]ease and desist from altering the working hours of employees without bargaining", and reversed to the extent that it orders respondent to "[m]ake whole employees for loss of pay suffered by them as a result of the unlawful unilateral decision to reduce work hours".

Affirmed in part, reversed in part.