SCHOOLCRAFT COLLEGE ASSOCIATION OF OFFICE
PERSONNEL, MESPA v SCHOOLCRAFT COMMUNITY COLLEGE

Docket No. 84473. Submitted February 12, 1986, at Detroit. Decided
December 16, 1986. Leave to appeal applied for.

The charging party, Schoolcraft College Association of Office
Personnel, Michigan Educational Support Personnel Associa-
tion (the union), brought a charge before the Michigan Employ-
ment Relations Commission alleging that the respondent,
Schoolcraft Community College, committed unfair labor prac-
tices. MERC held that no unfair labor practices occurred. The
union appealed.

The Court of Appeals *held:*

The college had no duty to bargain regarding the managerial
decision to lay off union employees. No unfair labor practice
occurred when the college placed union employees whose posi-
tions were eliminated into other positions. The unilateral trans-
fer of work away from union employees without bargaining is
an unfair labor practice. MERC did not err in holding that the
evidence did not prove that the respondent unilaterally trans-
ferred bargaining unit work to nonunit employees. There was
no impermissible interference with union members' exercise of
their rights under the public employment relations act.

Affirmed.

M. J. KELLY, P.J., concurred but wrote separately to state
that the Court of Appeals need not decide whether the college's
transfer of job duties to positions outside the bargaining unit
constituted an unfair labor practice because the union failed to

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 833, 998, 1071, 1073 *et
seq.;* 1462 *et seq.;* 1764 *et seq.*

Am Jur 2d, Motions, Rules, and Orders § 28.

Rights of state and municipal public employees in grievance pro-
ceedings. 46 ALR4th 912.

What constitutes unfair labor practice under state public employee
relations acts. 9 ALR4th 20.

Bargainable *or negotiable* issues in state public employment labor
relations. 84 ALR3d 242.

See also the annotations in the Index to Annotations under Mo-
tions.

sustain its burden of proving that a transfer of duties did, in fact, occur.

OPINION OF THE COURT

1. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — BUDGETARY LAYOFF DECISIONS — MANDATORY SUBJECTS OF BARGAINING.

Only mandatory subjects of bargaining involve a duty to bargain in good faith pursuant to the public employment relations act; a public employer's budgetary layoff decision is a managerial decision and not a mandatory subject of bargaining, however, there is a duty to bargain regarding the impact of that decision (MCL 423.215; MSA 17.455[15]).

2. LABOR RELATIONS — ADMINISTRATIVE LAW — UNFAIR LABOR PRACTICES.

An unfair labor practice hearing is not the proper forum for the resolution of a routine contract dispute.

3. LABOR RELATIONS — UNFAIR LABOR PRACTICES — REMOVAL OF UNION WORK.

The unilateral transfer of work away from union employees without bargaining is an unfair labor practice.

4. MOTIONS AND ORDERS — REOPENING THE RECORD.

Two conditions must exist before a motion to reopen the record may be granted: (1) the moving party could not with reasonable diligence have discovered and produced the evidence at the original hearing; and (2) the evidence sought to be introduced, and not merely its materiality, is newly discovered.

5. LABOR RELATIONS — LAYOFFS — CONCESSIONS — UNLAWFUL MOTIVES.

An employer's attempt to avoid unit layoffs by linking layoffs to its request for concessions is not per se evidence of an unlawful motive.

6. LABOR RELATIONS — COMMUNICATING BARGAINING POSITIONS.

An employer may communicate its bargaining position to its union employees as long as the need is immediate and it does not seek to circumvent the union or invite direct bargaining by presenting the employees with proposals not presented to the union.

CONCURRENCE BY M. J. KELLY, P.J.

7. LABOR RELATIONS — MANDATORY SUBJECTS OF BARGAINING.

*The determination of whether or not a particular issue is a*

*mandatory subject of bargaining in either the private or the public sector depends heavily on the particular facts of each case.*

*Hiller, Larky & Hoekenga* (by *Daniel J. Hoekenga* and *Marc M. Susselman*), for charging party.

*Butzel, Long, Gust, Klein & Van Zile* (by *Gregory S. Muzingo* and *Claudia V. Babiarz*), for respondent.

Before: M. J. KELLY, P.J., and D. F. WALSH and WAHLS, JJ.

WAHLS, J. This appeal arises out of an unfair labor practice charge against a college. We affirm the decision of the Michigan Employment Relations Commission and find that the college has no duty to bargain a managerial decision to lay off union employees, no unfair labor practice occurred when the college placed union employees whose positions were eliminated into other positions, MERC did not err in holding that the evidence did not prove that the college unilaterally transferred bargaining unit work to nonunit employees, and there was no impermissible interference with union members' exercise of their rights under the public employment relations act.

The facts are as follows. The charging party, the Schoolcraft College Association of Office Personnel, Michigan Educational Support Personnel Association (union), the duly recognized bargaining agent for all full-time office/clerical employees of respondent, Schoolcraft Community College, had a collective bargaining agreement effective from July 1, 1981, through June 30, 1983. The parties' collective bargaining agreement stated in art IV, § 2, that respondent's board has the sole right to hire all employees, as well as the right to promote,

assign, transfer, evaluate, suspend, *lay off* and dismiss such employees. Due to decreases in state appropriations to the college, respondent proposed a wage freeze to the union rather than laying off employees for budgetary reasons. The union rejected the proposal. Respondent began the process of eliminating positions and laying off employees.

The union has asserted several issues, all of which have been restated for clarity.

I

The union argues that MERC erroneously found that respondent did not have a duty to bargain its decision to lay off the union's employees because the finding is not supported by competent, material, and substantial evidence in the record. Furthermore, the union argues that the decision was legally erroneous. We disagree.

MERC has exclusive jurisdiction over claims of unfair labor practices pursuant to MCL 423.216; MSA 17.455(16); *Michigan Law Enforcement Union v Highland Park,* 138 Mich App 342, 348; 360 NW2d 611 (1984), rev'd on other grounds, 422 Mich 945 (1985). Section 106 of the Administrative Procedures Act, MCL 24.306; MSA 3.560(206), dictates the appellate scope of review for agency decisions. *Ron's Last Chance, Inc v Liquor Control Comm,* 124 Mich App 179, 181; 333 NW2d 502 (1983).

That section provides:

(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

* * *

(d) Not supported by competent, material and substantial evidence on the whole record.

* * *

(f) Affected by other substantial and material error of law.

(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings.

MERC's finding of fact regarding an unfair labor practice, if supported by competent, material, and substantial evidence when reviewing the record as a whole, shall be conclusive. MCL 423.216; MSA 17.455(16). Substantial evidence is defined as more than a scintilla but substantially less than a preponderance of the evidence. *Tocco v Marquette Prison Warden,* 123 Mich App 395; 333 NW2d 295 (1983); *Ron's Last Chance, supra,* 182.

This Court may review the law regardless of the factual findings of the commission. *Mid-Michigan Education Ass'n (MEA-NEA) v St Charles Community Schools,* 150 Mich App 763; 389 NW2d 482 (1986). "Review of MERC's findings must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and do not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably different views." *MEA-NEA, supra,* 768. Lastly, our review of a final agency determination is limited to the record; final decisions must include findings of fact and conclusions of law. *Human Rights Party v Michigan Corrections Comm,* 76 Mich App 204; 256 NW2d 439 (1977), lv den 402 Mich 906 (1978).

The controlling case is *Local 1277, AFSCME v Centerline,* 414 Mich 642, 653; 327 NW2d 822 (1982), in which the Court explained that Michi-

gan has adopted the federal courts' approach to a mandatory subject of bargaining for disputes involving the public sector. *Central Michigan University Faculty Ass'n v Central, Michigan University,* 404 Mich 268, 277; 273 NW2d 21 (1978). Only mandatory subjects involve a duty to bargain in good faith pursuant to § 15 of the PERA, MCL 423.215; MSA 17.455 (15). The Court then held that the decision to lay off is not a mandatory subject of bargaining, but a managerial decision. However, there is a duty to bargain regarding the impact of that decision. *Local 1277 AFSCME, supra,* 661. See, e.g., *Local 586, SEIU v Village of Union City,* 135 Mich App 553, 556; 355 NW2d 275 (1984), lv den 421 Mich 857 (1985).

In discussing several cases from other state forums, the Court identified the impact of layoffs to mean the work load and safety of remaining workers or whether seniority is a basis for layoffs. The Court approvingly cited *City of Brookfield v Wisconsin Employment Relations Comm,* 87 Wis 2d 819, 833; 275 NW2d 723 (1979), holding that a budgetary layoff decision was not a mandatory subject of bargaining. If it were a mandatory subject of bargaining, the equal balance of power that insures a union's collective bargaining rights and protects the general public's rights to determine the quality and level of municipal services they consider vital, would be destroyed. *Local 1277, AFSCME, supra,* 662-663.

Here, respondent offered the union two proposed addendums to their collective bargaining agreement. These were given in an attempt to reopen bargaining regarding wages, a mandatory subject of bargaining. MCL 423.215; MSA 17.455(15); *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 54-57; 214 NW2d 803 (1974); *Ottawa Co v Jaklinski,* 423 Mich 1, 12; 377 NW2d 668 (1985). The

union rejected the proposals. Respondent warned the union that its only alternative was a layoff which they had a right to do under the collective bargaining agreement. Therefore, the budgetary layoffs were within the managerial rights of respondent. As stated above, the impact of the layoff on remaining employees is a mandatory subject of bargaining. However, we have reviewed the record and find the impact to be minimal.

The union claims that respondent lied regarding its inability to pay the contractual wage increases and, because the "lie" involved a mandatory subject of bargaining, respondent violated its duty to bargain in good faith, thus committing an unfair labor practice. However, because the Supreme Court approvingly stated that budgetary layoffs are a managerial decision, *Local 1277, AFSCME, supra,* 662-663, rather than a bargaining decision, respondent was not required to prove its exact financial status to the union.

The union also asserts that respondent violated its duty to budget for its contractual responsibilities. As discussed above, MERC found that respondent had a right to lay off its employees. There is no requirement of an absolute inability to budget its funds and pay employees in order to exercise this right. MERC's decision that budgetary necessitated layoffs were a permissible managerial decision is supported by substantial evidence and does not violate the law.

II

The union argues that the "bumping" procedure allegedly violated the collective bargaining agreement and that, therefore, an unfair labor practice occurred. The collective bargaining agreement provided for a procedure in the event that an employ-

ee's position is eliminated or layoffs are necessary. Although employees within the terminated positions were not given a choice as to which positions they could take over, the collective bargaining agreement does not give employees this choice. There appears to be a bona fide dispute as to the meaning of the contractual language in this article; however, an unfair labor practice hearing is not the proper forum for the resolution of a routine contract dispute. Noteworthy, the pendency of this case does not preclude arbitration of the contractual claim, *Bay City School Dist v Bay City Ed Ass'n, Inc,* 425 Mich 426; 390 NW2d 159 (1986).

III

The union argues that MERC erroneously held that the evidence did not prove that respondent unilaterally transferred bargaining unit work to nonunit employees. The unilateral transfer of work away from union employees without bargaining is an unfair labor practice. *Lansing Fire Fighters v Lansing,* 133 Mich App 56; 349 NW2d 253 (1984). In the instant case, the union's witness said she saw several students or nonunit part-time employees working in former areas of reassigned bargaining members. This does not prove they were doing unit work. She also testified that she heard from other people or inferred it from the budget that students and part-time employees had taken over duties previously performed by reassigned bargaining members. However, this hearsay is unsupported by other testimony. There is disagreement regarding a newly created position in the food department. However, the dispute as to the proper interpretation of the contractual term, "established program," which is the main focus of the disagreement, is contractual. As in Issue II, the

parties are left to their contractual remedies. A grievance regarding this issue was not filed, therefore, an unfair labor practice cannot be found.

Finally, the union argues that MERC erred in refusing to open the record regarding respondent's posting of an accounting department clerk position as part-time. The union claims that this proves respondent's unfair labor practice of transferring union work without bargaining. Two conditions must exist before a motion to reopen the record may be granted: (1) the moving party could not with reasonable diligence have discovered and produced the evidence at the original hearing; and (2) the evidence sought to be introduced, and not merely its materiality, is newly discovered.

Here, MERC refused to reopen the record for the union to present proofs regarding an alleged posting. Apparently the posting occurred prior to the closing of the record by the hearing referee. Because the evidence was neither "newly discovered" on review before the commission, nor was its tardy presentation explained, it was properly not admitted into the record. Evidence that is not part of the final agency record cannot be judicially reviewed on appeal. *Human Rights Party, supra.* Therefore, MERC did not err in finding that no unfair labor practice of unilateral transfer of bargaining unit work occurred.

IV

The union's final argument is that MERC erred in holding that respondent did not impermissibly interfere with the union's members' exercise of their rights under PERA, MCL 423.16; MSA 17.454(17); MCL 423.210(1); MSA 17.455(10)(1). Although this is a serious charge, we find it without merit.

The union asserts that respondent's "threat" of layoffs if the union refused to accept a wage freeze had a chilling effect on its members' collective bargaining rights. Here, the union's members managed to unanimously reject the wage freeze by exercising their vote as union members. The layoffs were implemented. Therefore, respondent's "threat" did not force the union's members to abandon their union's leadership and not exercise their collective bargaining rights. Furthermore, an employer's attempt to avoid unit layoffs by linking layoffs to its request for concessions is not per se evidence of an unlawful motive.

The union claims that respondent had discriminatory motives in laying off the union's members and eliminating their positions. Where it is alleged that a discharge is motivated by anti-union animus, the burden of proof is on the party making the claim. The party must demonstrate that protected conduct was a motivating or substantial factor in the employer's decision to discharge the employee. Once this showing is established, the burden shifts to the employer to demonstrate that the same action would have taken place even in the absence of protected conduct. *NLRB v Wright Line, A Division of Wright Line, Inc,* 662 F2d 899 (CA 1, 1981), cert den, 455 US 989; 102 S Ct 1612; 71 L Ed 2d 848 (1982); *MESPA v Evart Public Schools,* 125 Mich App 71; 336 NW2d 235 (1983). See, *MERC v Reeths-Puffer School Dist,* 391 Mich 253, 260; 215 NW2d 672 (1974). As discussed in Issue iii, the union failed to prove that its bargaining unit work was actually transferred to nonunit members. Therefore, the increased use of nonunionized part-time and student-aide employees does not support any claim that respondent had retaliatory or discriminatory motives.

The union asserts that respondent's meetings

with employees affected by the layoffs, in addition to letters, were unnecessary. The union charges that these meetings were intended merely to discredit the union rather than simply to discuss new assignments. An employer may communicate its bargaining position to employees as long as the need is immediate and it does not seek to circumvent the union or invite direct bargaining by presenting the employees with proposals not presented to the union. *Medo Photo Supply Corp v NLRB*, 321 US 678; 64 S Ct 830; 88 L Ed 1007 (1944). We agree with MERC's finding that the testimony does not prove that respondent directly bargained with the employees; no proposals were suggested to them which had not already been presented to the union. Further, respondent had previously met with the union's leadership, urging them to take concessions to avoid the layoffs.

The union claims that the fact that four union leaders' or members' positions were eliminated, forcing them to "bump" to less senior positions, is evidence of respondent's anti-union motives. Again, the union bears the initial burden of proof on this charge. The clerical positions of the union's negotiators, past president, and past vice president were eliminated. These were four of the estimated eight positions to be eliminated. None of these four individuals were laid off, although they were not allowed to select the positions into which they were to be bumped. Respondent's labor director testified that a committee decided which positions were to be eliminated. These positions were not chosen based on the seniority of the employees, but rather on the needs of the departments. We agree with MERC's finding that this is a reasonable explanation for the choice of these individuals' positions to be those terminated. It appears that these individuals were involved because they were

in the positions to be terminated, and not because they were union activists.

Lastly, the union argues that a remark regarding the potential layoff of the union's negotiator during a "heated" discussion was discriminatory and interfered with her union. Considerable leeway is given to negotiators for antagonistic statements made during bargaining; therefore, a certain amount of antagonism is expected in heated bargaining. The fact that such statements were made does not, in and of itself, constitute an unfair labor practice. Therefore, as long as the antagonistic statements are reasonable and isolated and bargaining continues, the statements will not be regarded as an unfair labor practice. Viewing the circumstances of the statement, we find no error.

Affirmed.

D. F. WALSH, J., concurred.

M. J. KELLY, P.J. *(concurring)*. I concur with the majority's resolution of the instant case but write separately on the question of unilateral transfers of bargaining unit work to nonunit positions.

The majority in Part III of its opinion states that "[t]he unilateral transfer of work away from union employees without bargaining is an unfair labor practice." The authority cited in support of this rule is *Lansing Fire Fighters v Lansing,* 133 Mich App 56; 349 NW2d 253 (1984), in which I joined stating that the unilateral transfer of bargaining unit work out of the bargaining unit constitutes a mandatory subject of bargaining. In that case, a position within the bargaining unit had been vacated and the employer filled it with a nonunion employee whose annual salary and retirement benefits were reduced by approximately $14,000.

MERC found, and we agreed, that the employer's actions constituted an unfair labor practice because the employer's mandatory duty to bargain over the transfer of work outside the bargaining unit had not been waived by the union in light of past practices or by the terms of the collective bargaining agreement in effect.

While I adhere to that position on this general principle of labor law, I agree with the Supreme Court's observation in *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v Centerline,* 414 Mich 642, 659; 327 NW2d 822 (1982), that "whether or not a particular issue is a mandatory subject of bargaining in the private sector depends heavily on the particular facts" of each case. I believe the same observation applies to mandatory subjects of bargaining in the public sector, as evidenced by my participation in the recent case of *Ishpeming Supervisory Employees' Chapter of Local 128, Michigan Council 25, AFSCME, AFL-CIO v Ishpeming,* 155 Mich App 501; 400 NW2d 661 (1986).

In that case, I joined in an opinion which held that "the [unilateral] decision to transfer work [outside a bargaining unit] in pursuit of a legitimate reorganization effort was not a mandatory subject of bargaining." The City of Ishpeming had undertaken to reorganize the supervisory structure of its city departments, which effort resulted in the elimination of at least two union positions. The duties formally assigned to one of these supervisory positions were reassigned to other positions outside the supervisory bargaining unit. We held that the decision to reorganize is within management's prerogative and is therefore not a mandatory subject of bargaining. We further held that the decision to reassign duties outside a bargaining unit as part of a legitimate reorganization effort is

part and parcel of the decision to reorganize and is therefore also a decision within management's prerogative and not a subject of mandatory bargaining. We cautioned, however, that the impact of the transfer of duties is a mandatory subject of bargaining, which the city had apparently observed by bargaining with the nonsupervisory unions representing those positions to which the work had been transferred. In the narrow context of government reorganization, therefore, I have held that the unilateral transfer of duties outside a bargaining unit does not constitute an unfair labor practice.

I wish to point out that this is a difficult area of labor law which is still in the evolving stages as applied to the Michigan public sector. Although I believe that the seemingly conflicting decisions in *Lansing Fire Fighters* and *Ishpeming* regarding the unilateral transfer of bargaining work outside the bargaining unit are reconcilable if viewed in context, I am persuaded that further argument and discussion is necessary before this area of the law is settled.

Fortunately, we need not decide in the instant case whether the college's transfer of job duties to positions outside the bargaining unit constituted an unfair labor practice because the union has failed to sustain its burden of proving that a transfer of duties did, in fact, occur. I thus concur with the majority's opinion affirming the decision of MERC.