CITY OF ISHPEMING SUPERVISORY EMPLOYEES' CHAPTER OF
LOCAL 128, MICHIGAN COUNCIL 25, AMERICAN FEDERATION
OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO v
CITY OF ISHPEMING

Docket No. 86545. Submitted May 8, 1986, at Marquette. Decided
October 20, 1986. Leave to appeal applied for.

The Ishpeming Supervisory Employees' Chapter of Local 128,
Michigan Council 25, American Federation of State, County
and Municipal Employees, the union which represented certain
supervisory personnel employed by the City of Ishpeming, filed
an unfair labor practice charge against the city before the
Michigan Employment Relations Commission following a reor-
ganization of supervisory positions which involved the elimina-
tion of some positions and reassignment of supervisory func-
tions to other existing clerical and nonsupervisory positions as
well as to one newly created position. The union alleged that
the city had discriminated against three employees because of
their union affiliation and activity in violation of the public
employment relations act and that the city had failed or
refused to bargain with the union over mandatory subjects of
bargaining under PERA. MERC determined that the city had
failed to bargain with the union concerning mandatory subjects
of bargaining, entered an order directing the city to bargain
with the union, and issued a make-whole award to employees
who suffered as a result of the city's unfair labor practice. The
city appealed.

The Court of Appeals *held:*

1. The city's decision to reorganize its supervisory personnel
was not a mandatory subject of bargaining. However, the
impact of that decision was a mandatory subject of bargaining.

2. The union did not clearly and unmistakably waive its right

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1764-1775.

Rights of state and municipal public employees in grievance pro-
ceedings. 46 ALR4th 912.

Validity and construction of statutes or ordinances providing for
arbitration of labor disputes involving public employees. 68
ALR3d 885.

to bargain regarding the impact of the city's reorganization plan.

3. The record did not disclose that the city actually engaged in good faith bargaining with the union regarding the impact of the reorganization plan.

4. MERC did not err in determining that the union was the appropriate collective bargaining unit to represent the employee in the newly created supervisory position.

5. MERC did not err in awarding back pay to the employee whose position was terminated and who was not reassigned to another position following the reorganization.

Affirmed in part, reversed in part and remanded.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — DUTY TO BARGAIN.

A public employer's decision to undertake a reorganization plan wherein positions are eliminated or job functions are reassigned to other existing positions or to newly created positions is not a mandatory subject of bargaining under the public employment relations act; however, such public employer has a duty under the act to bargain in good faith with its employees' collective bargaining agent regarding the impact of the reorganization plan (MCL 423.215; MSA 17.455[15]).

*Green, Renner, Weisse, Rettig, Rademacher & Clark, P.C.* (by *Nino E. Green*), for the charging party.

*David M. Savu,* for respondent.

Before: T. M. BURNS, P.J., and J. H. GILLIS and M. J. KELLY, JJ.

PER CURIAM. Respondent, City of Ishpeming, appeals as of right from an order of the Michigan Employment Relations Commission in regard to an unfair labor practice charge asserted by the union representing supervisory personnel employed by the city under the provisions of the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* The unfair labor practice charge was based on allegations that (1) the city had

unlawfully discriminated against three employees (Lambert Chard, Richard Burke and George Stagliano) because of their union affiliation and activity; and (2) the city had failed or refused to bargain with the union over mandatory subjects of bargaining.

MERC determined that the city had not engaged in unlawful discrimination under PERA. However, MERC concluded, contrary to the hearing officer's recommendation, that the city had failed to bargain with the union concerning mandatory subjects of bargaining. MERC entered an order directing the city to bargain with the union and also issued a make-whole award to the employees who suffered losses as a result of the city's unfair labor practice, i.e., Burke and Stagliano. The city appeals from this order.

### FACTS

Employees of the City of Ishpeming are organized into three separate bargaining units: a supervisory unit, a clerical unit and a DPW (Department of Public Works) unit. In 1980, the city began to reorganize the supervisory structure of various city departments, including the Department of Public Works. During July through October of 1982, the city implemented the reorganization plan giving rise to the dispute in this case. At that time, George Stagliano was an Administrative Assistant within the Department of Public Works and Richard Burke was the Cemetery and Parks Director for the city. Stagliano and Burke were both members of the supervisory unit.

On July 7, 1982, the Ishpeming City Council decided to make several organizational changes which were recommended by the city manager and which were to be effective August 1, 1982. The city

manager had proposed that the Administrative Assistant-DPW position (which was held by Stagliano) be abolished. He also proposed that the position of Cemetery and Parks Director (which was held by Burke) be abolished and that a new "Cemetery and Parks Foreman" position be created. The new position was to incorporate most, but not all, of the job duties from the old position.

In order to implement the proposed changes, the city manager requested a "special conference." Articles 8 and 37 of the collective bargaining agreement between the city and the supervisory unit provided:

### ARTICLE 8. SPECIAL CONFERENCES

(a) Special conferences for important matters will be arranged between the Chapter Chairman and the Employer or its designated representative upon the request of either party. Such meetings shall be between at least two representatives of the Union and two representatives of Management. Arrangements for such special conferences shall be made in advance and an agenda of the matters to be taken up at the meeting shall be presented at the time the conference is requested. Matters taken up in special conference shall be confined to those included in the agenda. Conference shall be held a [sic] mutual agreeable time. The members of the Union shall not lose time or pay for time spent in such special conferences. This meeting may be attended by representatives of the Council and/or representatives of the International Union.

(b) The Union representatives may meet on the Employer's property for at least one-half hour immediately preceding the conference.

\* \* \*

### ARTICLE 37. CONSOLIDATION OR ELIMINATION OF JOBS

The Employer agrees that any consolidation or

elimination of jobs within the Unit shall not be effected without a special conference.

On July 9, 1982, the city manager contacted the union business agent by letter requesting a special conference with the supervisory unit and also with the DPW unit regarding the reorganization plan. On August 30, 1982, a special conference was held. According to the city manager, the union's attitude at the meeting was one of opposition to the reorganization plan and preference for maintenance of the status quo. No agreement was reached at the meeting and apparently no further meetings were held between representatives of the city and representatives of the supervisory unit prior to implementation of the reorganization plan by the city.

On September 27, 1982, the city manager addressed a memo to Burke, who was the supervisory unit chairman. In that memo, the city manager notified Burke that Stagliano was to have his employment terminated. Burke requested a special conference and the city manager refused on the ground that the city had met its contractual obligation by meeting with the unit representatives at the August 30, 1982, special conference.

On September 28, 1982, the city council approved implementation of the reorganization plan. On September 29, 1982, the city manager notified Stagliano of his layoff which was to be effective October 18, 1982. He also notified Burke of the elimination of three positions, including Burke's own position and Stagliano's. Burke was transferred from his old position to the newly created position of Cemetery and Parks Foreman.

The reorganization ultimately resulted in a transfer of the duties of the old Administrative Assistant-DPW position to existing clerical and non-

supervisory positions. It also resulted in a transfer of some of the duties of the Cemetery and Parks Director position to existing nonsupervisory positions. The remaining job duties were assigned to the newly created "working" foreman position.[1]

Some of the city employees who held the positions to which the job duties were transferred were represented by the clerical unit and some by the DPW unit.[2] The city apparently bargained in good faith with the DPW and clerical units over the effects of the transfer of the job duties from the old supervisory positions to positions held by employees within those units.

However, in spite of the fact that the reorganization plan had already been implemented, the supervisory unit maintained that the city should bargain over the dispersal of duties previously associated with positions held by employees within the supervisory unit to positions held by employees in other units. At least four meetings were held in November of 1982 in regard to changes occasioned by the reorganization and in regard to the 1983 contract. Apparently, the position of the city during these negotiations was that the elimination of the Administrative Assistant-DPW position and the dispersal of its duties to positions held by employees who were represented by other bargaining units was not a mandatory subject of

---

[1] It should be kept in mind that, in addition to its general effect on the various employment *positions* within the city, the reorganization also directly affected various *individuals.* Among them were Stagliano and Burke. The *reorganization* resulted in Stagliano's employment being completely terminated and Burke losing his job, but being transferred to the newly created position.

[2] Those employees were represented by either the clerical or DPW unit *both before and after* the reorganization. Because their jobs changed with the addition of the new duties, a *possibility* arose that the employees who ultimately held the new positions should have been included in a different bargaining unit. However, the parties and MERC apparently agree that they were properly represented by the same bargaining units.

bargaining with the supervisory unit. The city took the same stance in regard to the elimination of the Cemetery and Parks Director position and the dispersal of the duties of that job. Moreover, the city took the position that the Cemetery and Parks Foreman was to be represented by the DPW unit. The city maintained that the unilateral elimination or establishment of the positions was within the scope of the city's powers provided in the supervisory union contract.

On December 6, 1982, the supervisory unit filed the charges leading to this appeal. After two days of hearings, the hearing officer recommended that MERC dismiss the charges. However, contrary to the hearing officer's recommendation, MERC determined that the city had failed to bargain with the union concerning several mandatory subjects of bargaining.

MERC first concluded that Burke, in his newly-created foreman position, was to be represented by the supervisory unit and not the DPW unit as the city had contended. Therefore, MERC concluded that the city had a continuing duty to bargain with the supervisory unit regarding wages and other terms of employment associated with that position.

MERC next found that the work previously performed by the Administrative Assistant-DPW (George Stagliano) was improperly transferred to positions which were not represented within the supervisory unit. MERC held that a decision to remove bargaining unit work from the unit and to reassign it to employees outside the unit is a mandatory subject of bargaining. MERC concluded that although the city had no obligation to bargain over Stagliano's layoff or the elimination of his position, it did have an obligation to bargain over the transfer of his work outside the bargaining

unit, even though the transfer may have been part and parcel of the layoff decision.

MERC also held that there was no clear and explicit waiver by the union of its right to bargain over the transfer of bargaining unit work from its unit to other units.

Finally, MERC found that the city did not satisfy its obligation to bargain over the transfer of work at the time that it implemented the changes in October of 1982.

### ANALYSIS

This Court reviews a MERC decision to determine whether the decision is authorized by law and whether the commission's findings are supported by competent, material and substantial evidence on the whole record. Const 1963, art 6, § 28; MCL 423.216(d) and (e); MSA 17.455(16)(d) and (e); *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 121; 223 NW2d 283 (1974).

### A

The main issue presented in this case is whether PERA imposed a duty on the city to bargain in good faith regarding a proposed transfer of work from employees or positions within one bargaining unit to employees or positions outside the unit. We hold that the decision to transfer work in pursuit of a legitimate reorganization effort was not a mandatory subject of bargaining, but the impact of that decision was an issue for bargaining.

Pursuant to § 15 of PERA, a matter involving "wages, hours, and other terms and conditions of employment" is a mandatory subject of bargaining. MCL 423.215; MSA 17.455(15). That section

does not immutably fix a list of subjects for mandatory bargaining, but, instead, courts must utilize a case-by-case approach in determining whether a given subject involves a "term and condition of employment." *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 490-491; 233 NW2d 49 (1975), lv den 395 Mich 756 (1975). Once a specific subject has been classified as a mandatory subject of bargaining, the parties are required to bargain concerning the subject and neither party may take unilateral action on the subject absent an impasse in negotiations. *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 277; 273 NW2d 21 (1978).

Subjects such as hourly rates of pay, overtime pay, shift differentials, holiday pay, pensions, no-strike clauses, profit sharing plans, rental of company houses, grievance procedures, sick leave, work rules, seniority and promotion, compulsory retirement age and management rights clauses are examples of mandatory subjects of bargaining. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 55; 214 NW2d 803 (1974); *Central Michigan University, supra,* p 278.

In this case, the parties actually did bargain and reach an agreement concerning the city's right to "reorganize." The bargaining took place in 1981 and 1982 and resulted in the 1982 collective bargaining agreement. A management rights clause was set forth in Article 43 of the agreement.[3] The

---

[3] Article 43 of the supervisory union contract provides:

### ARTICLE 43. EMPLOYER'S RIGHTS

Except to the extent expressly abridged by a specific provision of this Agreement, the Employer reserves and retains, solely and exclusively, all of its common law rights to manage the business, as such rights existed prior to the execution of or any other previous agreement with the Union or any other Union. The sole and exclusive rights of Management which are

agreement also contained Article 37, *supra,* which recognized that the city could consolidate or eliminate jobs within the supervisory unit. Thus, the agreement clearly allowed the city to reorganize its departments and to eliminate jobs held by employees within the supervisory unit pursuant to a legitimate reorganization plan. The only requirement imposed by contract was that such elimination not be effected without a special conference.[4] Because the city had the right to reorganize, it necessarily had the right to transfer work to employees or positions not represented by the supervisory unit. When a job is eliminated pursuant to a reorganization, the duties previously connected

not abridged by this Agreement, shall include but are not limited to its rights to determine the existence or non-existence of facts which are the basis of Management decision, to determine prices of service, extent of services, and methods of financing, to drop a service, contract a service when such contracting will not result in lost time for departmental personnel, or any part thereof, free of the liabilities of this Agreement; to establish or continue policies, practices and procedures for the conduct of the business and from time to time, to change or abolish such policies, practices or procedures; *the right to determine and [from] time to time to redetermine, the number, the location, relocation and types of its operation and the methods, processes, and materials and services to be employed;* to discontinue service, processes 'or operations or to discontinue their performance by employees of the Employer; to determine the number of hours per day or per week operations shall be carried on; *to select and to determine the number and types of employees required; to assign work to such employees in accordance with the requirements determined by Management; to establish and change work schedules and assignments; to transfer, promote, or demote employees, or to lay off, terminate or otherwise relieve employees from duty for lack of work or other legitimate reasons,* to determine the facts relating to lack of work; to make and enforce reasonable rules for the maintenance of discipline; to suspend, discharge, or otherwise discipline employees for cause; *and otherwise to take such measures as Management may determine to be necessary for the orderly, efficient, and economical operation of the Employer.* [Emphasis added.]

[4] In this case, a special conference was held and the union was notified of the proposed action.

with that job must necessarily be dispersed to other positions. A dispersal of the duties is part and parcel of the reorganization. A "reorganization" cannot be completed without a dispersal of the various job duties to other positions within the city. Thus, we believe that the parties actually agreed, after bargaining, that the city could decide which positions would receive the work which was to be dispersed. Even if they had not agreed in this regard, we believe that the decision to eliminate jobs pursuant to a reorganization was within the scope of management prerogative and was not a mandatory subject of bargaining. The same is true regarding the concomitant decision as to which positions were to receive the duties previously associated with the old jobs.[5]

However, we believe that the impact of such a decision is a mandatory subject of bargaining. Once the initial decision has been made, the union has the ability to protect its members by bargaining regarding the impact of the decision. For instance, if any employees are to lose their jobs because of the reorganization, the union can bargain concerning the specific individuals who are to be laid off.

In *Local 1277, AFSCME v Center Line*, 414 Mich 642; 327 NW2d 822 (1982), the Supreme Court held that the impact of a decision may be a mandatory

[5] Other panels of this Court have not ruled contrary to this holding. In *Lansing Fire Fighters Union v Lansing*, 133 Mich App 56; 349 NW2d 253 (1984), the defendant therein conceded that the transfer of bargaining unit work was a mandatory subject of bargaining. This Court did not address the issue, but merely referred to previous MERC decisions on the issue. While we recognize that MERC is the agency created to deal with such issues and that it has special competence concerning such matters, we believe, in light of *Local 1277, AFSCME v Center Line*, 414 Mich 642; 327 NW2d 822 (1982), that MERC has committed an error of law in this regard. We feel that it is a management prerogative to reorganize and to reassign job duties to other jobs within the city. We note that no retaliatory animus was found to exist in this case.

subject of bargaining even though the decision itself is not. In *Center Line,* an arbitration panel was involved which could compel agreement only as to mandatory subjects of bargaining. The arbitration panel had adopted a layoff provision which stated that employees represented by the union therein could be laid off only in conjunction with layoffs or cutbacks in other departments. The Supreme Court held that the clause severely restricted the city in its ability to function effectively and that it posed serious questions with regard to the political accountability for such decisions. The Court interpreted the clause as one that was within the scope of the city's prerogative.

However, the Court also went on to state:

> [W]hile the initial decision to lay off is not a mandatory subject of bargaining, and therefore cannot be compelled in an arbitration award, it is clear that there is a duty to bargain over the *impact* of that decision. Thus, the union has the ability to protect its members after the initial decision has been made. It is one thing to require the city to bargain over the *impact* of its decision to lay off police officers and quite another to permit them to lay off police officers only if layoffs are made in other departments as well. [414 Mich 661.]

We are persuaded that a similar duty to bargain exists in this case. At the time they entered into the 1982 contract, the parties did not (and could not reasonably have been expected to) bargain regarding the impact of the as yet unannounced reorganization plan. We believe that a duty to bargain regarding its impact arose during 1982 when the city announced its intention to reorganize.

B

We next address the city's argument that by virtue of provisions of the collective bargaining agreement the union waived the right to bargain. First, as noted previously, the city had a duty to bargain only in regard to the impact of the reorganization. We find no "waiver" in regard to the duty to bargain about the impact of the management decision.

We first note that we have serious doubts as to whether a union may ever "waiver" an employer's duty to bargain since that duty is imposed by statute in order to rectify the past practice of one party refusing to bargain with the other. Even assuming that such a "waiver" is possible, this Court has held that in order for a union to waive its right to bargain over a term of employment that is a mandatory subject of collective bargaining, the waiver must be "clear and unmistakable." See *Lansing Fire Fighters Union v Lansing,* 133 Mich App 56, 66; 349 NW2d 253 (1984); *Mid-Michigan Education Ass'n v St Charles Community Schools,* 150 Mich App 763, 771; 389 NW2d 482 (1986).

We agree with MERC that there is no clear and unmistakable waiver in this case. No clause in the contract refers to any sort of "waiver" nor does any clause refer to a waiver of the "duty to bargain." The clause concerning the city's rights refers only to the contract and indicates nothing concerning a waiver of any statutory duties. Thus, we must conclude that the contract, when formulated, contained no clear waiver of any statutory duty to bargain. Nor do we find any clause in the contract which would allow the city to unilaterally determine how the elimination of jobs should impact on the union membership. Thus, the city had

a duty to bargain concerning the impact of its reorganization plan.

### C

We next address the city's argument that it actually engaged in good faith bargaining with the supervisory unit over the impact of the reorganization plan. A review of the record fails to reveal any discussions or proposals in regard to the impact of the city's decision. The union's request that the city bargain concerning whether any work should be transferred out of the unit necessarily included a request that the city bargain over the impact of a transfer of work.

### D

The city also challenges MERC's finding in regard to the transfer of work from the Administrative Assistant-DPW position. MERC found that after Stagliano's layoff, the work was assigned to executive positions outside of any bargaining unit. The city argues that this finding is not supported by competent, material and substantial evidence on the whole record. We agree with the city that there is no evidence on the record to support MERC's finding. The work was transferred to positions held by members of the clerical and DPW units.

However, that fact is irrelevant to this appeal. Regardless of whether the work was assigned to executive positions or to other nonsupervisory positions, the result was the same. That is, work was transferred away from positions held by employees represented by the supervisory unit. We have already indicated that the city had a duty to bargain only over the impact of the decision to transfer the work.

E

The city also contends that MERC erred in finding that Burke, in his new position as Cemetery and Parks Foreman, was to be represented by the supervisory unit. The city contends that Burke's duties in his new job were significantly different from the duties in his old job and that he should have been represented by the DPW unit. The city claims that it bargained appropriately regarding the effects of his transfer with the DPW unit. We disagree with the city's contentions.

Pursuant to MCL 423.213; MSA 17.455(13) and MCL 423.9e; MSA 17.454(10.4), the task of determining an appropriate collective bargaining unit is left to MERC. It is well settled that the determination of an appropriate unit is a finding of fact which will not be overturned by this Court if supported by competent, material and substantial evidence. *Michigan Educational Support Personnel Ass'n v Southfield Public Schools*, 148 Mich App 714, 717; 384 NW2d 768 (1985). MERC's decision in this case is supported by substantial, competent and material evidence.

F

Finally, the city contends that MERC erred in awarding Stagliano back pay. We disagree.

The legal test for determining whether a "back pay" order or monetary reimbursement is appropriate is whether or not the employee in question would have been paid absent the unlawful unilateral action. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 399 Mich 449, 456; 249 NW2d 121 (1976). The city in this case had a duty to bargain over the impact of the reorganization decision. While the city could choose to eliminate

the *position* formerly held by Stagliano, the city retained a duty to bargain regarding the *impact* of that decision. The city could not unilaterally choose which individual worker was to be laid off. Whether Stagliano or less senior coworkers were to bear the burden of the city's decision was a mandatory subject of bargaining. See, e.g., *Local 586, Service Employees Int'l Union v Union City,* 135 Mich App 553, 556; 355 NW2d 275 (1984), lv den 421 Mich 857 (1985).

## CONCLUSION

The decision of the Michigan Employment Relations Commission is affirmed in part and reversed in part. The case is remanded for further proceedings in accord with this opinion. We do not retain jurisdiction.