GRAND RAPIDS COMMUNITY COLLEGE FACULTY ASSOCIATION v
GRAND RAPIDS COMMUNITY COLLEGE

Docket No. 214678. Submitted December 8, 1999, at Grand Rapids.
Decided February 11, 2000, at 9:00 A.M.

Grand Rapids Community College Faculty Association (the FA) initiated in the Michigan Employment Relations Commission (MERC) an unfair labor practice charge against Grand Rapids Community College (GRCC), alleging violation of the public employment relations act (PERA), MCL 423.201 *et seq.*; MSA 14.455(1) *et seq.* The charge was based on the unilateral decision of GRCC to implement a cap on the total teaching hours of bargaining unit faculty members. The cap had the effect of restricting the individual member's opportunity to accept overload hours, hours voluntarily assumed in addition to a member's normal teaching load. Under a bargained-for allocation system tied to seniority and full-time status, the members had been allowed for many years to assume unlimited available overload hours. The MERC adopted a hearing referee's decision and recommended order and dismissed the charges, finding that the issue involved a permissive, rather than mandatory, subject of bargaining and that no violation of the PERA occurred. The FA appealed.

The Court of Appeals *held*:

1. The decision of GRCC involves an issue constituting a mandatory subject of bargaining. The MERC's order must be reversed and the matter must be remanded for further proceedings.

2. Competent, material, and substantial evidence supports the finding of the MERC that overload hours are in the nature of overtime hours for purposes of the PERA.

3. The total number of overload hours to make available each semester is within the purview of GRCC and is a permissive subject of bargaining. However, in this case, the imposition of a cap on an individual's total teaching hours, which restricts the amount of overload hours a particular faculty member may work, constitutes a mandatory subject of bargaining because the decision directly affects application of a bargained-for allocation process by which the total available overload hours are distributed. The individual cap has no clear economic relationship to GRCC's regulation of its

operations. Any alleged concern that quality of instruction declines as an individual's teaching hours increase is insufficient to establish the imposition of an individual cap on total teaching hours as within management's prerogative.

Reversed and remanded.

1. Labor Relations — Public Employers — Collective Bargaining — Subjects of Bargaining.

A public employer has a duty to collectively bargain in good faith with an employee's union representative regarding wages, hours, and other terms and conditions of employment; these issues are mandatory subjects of bargaining, while issues falling outside the scope of such classifications are permissive or illegal subjects of bargaining; permissive subjects may be changed unilaterally without bargaining (MCL 423.215[1]; MSA 17.455[15][1]).

2. Labor Relations — Public Employers — Collective Bargaining — Subjects of Bargaining.

The scope of the bargaining obligation of public employers is broadly construed because public employees are restricted from striking; the determination of what constitutes a mandatory subject of bargaining under the public employment relations act is decided case by case (MCL 423.201 et seq.; MSA 17.455[1] et seq.).

3. Labor Relations — Public Employers — Collective Bargaining — Educational Policy.

A public employer has no duty to collectively bargain with regard to educational policy.

4. Labor Relations — Collective Bargaining — Subjects of Bargaining.

Any matter that has a material or significant effect on wages, hours, or other conditions of employment or that settles an aspect of the relationship between employer and employee is a mandatory subject for collective bargaining; management decisions that are fundamental to the basic direction of a corporate enterprise or that impinge only indirectly on employment security are not mandatory subjects for collective bargaining.

5. Labor Relations — Collective Bargaining — Subjects of Bargaining.

An employer's decision that is within the scope of management prerogative is a permissive subject of bargaining; nonetheless, the effect of the decision on the employees may be a mandatory subject over which the parties must bargain.

*Pinsky, Smith, Fayette & Hulswit* (by *Edward M. Smith, Katherine M. Smith,* and *Michael L. Fayette*), for the charging party.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Thomas P. Hustoles* and *Oren R. Griffin*), for the respondent.

Before: MURPHY, P.J., and HOOD and NEFF, JJ.

MURPHY, P.J. Grand Rapids Community College Faculty Association (the FA) appeals as of right from a decision and order of the Michigan Employment Relations Commission (MERC). The MERC's decision and order, which adopted the decision and recommended order of a hearing referee, resolved the FA's unfair labor practice charges brought pursuant to the public employment relations act (PERA), MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.* Both the hearing referee and the MERC found that the decision of respondent Grand Rapids Community College (GRCC) to implement a cap on bargaining unit faculty members' total teaching hours, which thus restricts the faculty members' opportunity to accept overload teaching hours, involves an issue constituting a permissive, rather than mandatory, subject of bargaining.

The significance of whether an issue is a permissive or mandatory subject of bargaining was addressed in *Southfield Police Officers Ass'n v Southfield*, 433 Mich 168, 178; 445 NW2d 98 (1989):

> The classification of a particular issue as a mandatory or permissive subject "plays a vital role in the bargaining dynamics of the public sector." [*Local 1277, Metropolitan Council No 23, AFSCME v Center Line*, 414 Mich 642, 653; 327 NW2d 822 (1982).] Unilateral action on the part of a public employer, or its refusal to engage in collective bar-

gaining with respect to a mandatory subject, may constitute an unfair labor practice under § 10(1)(e) of the PERA. MCL 423.210(1)(e); MSA 17.455(10)(1)(e).

Contrary to the MERC, we find that GRCC's decision affecting the opportunity of individual faculty members to accept overload hours involves an issue constituting a mandatory subject of bargaining. Accordingly, we reverse and remand to the MERC for appropriate further proceedings and consideration.

The FA initiated the underlying unfair labor practice charges in response to GRCC's imposition of restrictions affecting the assignment of overload teaching hours to members of the bargaining unit. Overload refers to those hours voluntarily assumed by a faculty member during a given semester in addition to the member's normal teaching load. Under a bargained-for allocation system tied to seniority and full-time status, for many years faculty members were allowed to assume unlimited overload hours, as long as such hours were available.[1] This allocation process re-

---

[1] The hearing referee's decision presents a concise overview of the allocation process:

Under the contract the normal teaching or work load for a full-time faculty member is fifteen contact [teaching] hours per semester, or 30 contact [teaching] hours or the equivalent per school year, except for those faculty who are assigned composition classes, where a full load is defined as 12 hours. Faculty have been assigned overload classes since at least 1980, and there has been developed a complex contractual procedure for the distribution of overload classes. Each semester the departments assign the course offerings to the department faculty until all regular faculty members have been assigned a full load. Additional unassigned courses are overload classes that are distributed to the full-time departmental faculty first on a voluntary basis, then to other "qualified" full-time College faculty, retired faculty, part-time faculty, and finally to other qualified personnel of the College.

sulted in some members assuming in excess of thirty total teaching hours in a single semester. In December 1994, however, as the parties' existing labor agreement neared its August 1995 expiration, GRCC imposed a limitation capping total teaching hours for individual faculty members at thirty hours a semester. The natural effect of this cap was a restriction on faculty members' ability to accept overload hours. The thirty-hour maximum was in effect for the spring 1995 semester; subsequently, GRCC imposed a twenty-nine-hour limitation for the fall 1995 and spring 1996 semesters.

The FA filed a series of grievances protesting the unilateral decision to impose restrictions, and the dispute went to arbitration. The arbitrator ruled in favor of the FA with respect to restrictions effective before the August 1995 expiration of the labor agreement, but concluded that the restrictions effective during the fall 1995 and spring 1996 semesters were not arbitrable because they occurred after expiration of the contract.

In this appeal we are concerned with only those restrictions effective during the latter two semesters. The validity of those restrictions was first contested before the hearing referee, who, following a hearing, issued a decision and recommended order concluding that overload hours are equivalent to overtime. Relying on a line of MERC decisions denoting overtime as a permissive subject of bargaining, the hearing referee likewise deemed overload hours a permissive subject of bargaining and found no error in GRCC's unilateral change regarding individual restrictions. The FA took exception to this decision. While effectively conceding that the total aggregate number of overload hours

to be offered each semester is an issue of economic control within the purview of GRCC, and thus a permissive subject of bargaining, the FA argued that the decision to impose individual restrictions on total teaching hours, affecting the assignment of overload hours, relates not to the availability of total overtime, but instead to the *process of distribution* of overtime. Thus, the FA contended, because the decision to implement restrictions has a direct effect on the previously bargained-for distribution process, the specific overtime-related issue herein presented should have been deemed a mandatory subject of bargaining. The MERC, in its decision and order, first agreed with the hearing referee's base view that overload hours equated to overtime. Next, declining to adopt the distinction identified in the FA's argument, the MERC effectively found that all issues related to overtime, except overtime pay, were permissive rather than mandatory subjects of bargaining. The MERC affirmed the hearing referee's decision that GRCC had no duty to bargain with the FA regarding the restriction of total teaching hours. The FA renews its arguments in this appeal.

This case presents a preliminary question of fact, whether overload equates to overtime, and, if so, a significant legal question of first impression, whether the decision to impose individual limits that effectively restrict overload or overtime is a permissive or mandatory subject of bargaining.

Factual findings of the MERC are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole. MCL 423.216(e); MSA 17.455(16)(e); Const 1963, art 6, § 28; *Amalgamated Transit Union, Local 1564, AFL-CIO v*

*Southeastern Michigan Transportation Authority,*
437 Mich 441, 450; 473 NW2d 249 (1991). Meanwhile,
we review an order entered by the MERC to determine
if substantial rights have been prejudiced. MCL
24.306; MSA 3.560(206).

We first briefly address the factual question
whether the overload hours herein at issue are
equivalent to overtime. The record demonstrates that
overload hours are teaching hours voluntarily worked
in addition to a faculty member's normal workload.
Faculty members who take on overload hours are
paid separately from and in addition to their base sal-
ary. Furthermore, FA bargaining unit members have
themselves effectively identified overload as equi-
valent to overtime by using the terms interchangeably
in internal studies. These facts represent competent,
material, and substantial evidence supporting the
MERC's finding that overload hours are in the nature of
overtime for purposes of the PERA. *Amalgamated
Transit Union, supra.*

Next, we consider the FA's legal challenge to the
MERC order. The FA contends that the MERC prejudiced
the FA's substantial rights because the order was
affected by a substantial and material error of law.
MCL 24.306(1)(f); MSA 3.560(206)(1)(f). Specifically,
the FA argues that the MERC incorrectly determined
that a decision effectively restricting individual over-
load hours, which necessarily affects the process of
distribution of total available overload, is a permis-
sive subject of bargaining. Under the PERA, a public
employer has a duty to collectively bargain in good
faith with the union representative over "wages,
hours, and other terms and conditions of employment
. . . ." MCL 423.215(1); MSA 17.455(15)(1). These

issues are mandatory subjects of bargaining, while issues falling outside the scope of such classifications are permissive or illegal subjects of bargaining. *Southfield Police Officers Ass'n, supra* at 177-178. Permissive subjects can be unilaterally changed without bargaining. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 56, n 7; 214 NW2d 803 (1974); *West Ottawa Ed Ass'n v West Ottawa Public Schools Bd of Ed,* 126 Mich App 306, 314; 337 NW2d 533 (1983). The determination of what constitutes a mandatory subject of bargaining under the PERA must be decided case by case. *Southfield Police Officers Ass'n, supra* at 178. Nevertheless, we are guided in our analysis by the basic proposition that because public employees are restricted from striking, the scope of the bargaining obligation for public employers is to be broadly construed. *Bay City Ed Ass'n v Bay City Public Schools,* 430 Mich 370, 375; 422 NW2d 504 (1988).

As the MERC's decision indicates, its opinions establish a general proposition that overtime constitutes a permissive, rather than mandatory, subject of bargaining under the PERA. The MERC has consistently held that such additional remuneration is not part of regular wages and may be unilaterally reduced as part of an employer's right to regulate and control its operations. See *Branch Intermediate School Dist v Branch Intermediate Organization,* 1994 Merc Lab Op 163; *St Clair Co Rd Comm v Local 516M, Service Employees Int'l Union,* 1992 Merc Lab Op 316; *Battle Creek Fire Dep't v Organization of Supervisory Personnel of the Battle Creek Fire Dep't,* 1989 Merc Lab Op 726; *Roseville v Police Officers Ass'n of Michigan,* 1987 Merc Lab Op 182; *Leelanau Co Bd of Comm'rs v Lee-*

*lanau Co Police Officers Ass'n,* 1970 Merc Lab Op 1054. · Each of these opinions was issued without exception, however, and Michigan courts have never explicitly addressed the question whether overtime constitutes a permissive or mandatory subject of bargaining.[2]

Contrary to the MERC's reliance on the general proposition found in its previous opinions, and its apparent determination that any and all issues related to overtime, except overtime pay rates, are permissive subjects of bargaining, we find that the application of such a general rule is insufficient to address the specific action taken in this case. We believe that to simply adopt this general proposition would be to inadequately gloss over the particularized circumstances of this case, in which GRCC's imposition of individual limits on total teaching hours affects the assignment of overtime by affecting a bargained-for process of distribution of total available overtime. Consequently, we engage in a more detailed inquiry regarding the

---

[2] We acknowledge that by recently citing two of these MERC decisions this Court did indicate agreement with the general proposition regarding the permissive bargaining status of overtime. See *Organization of School Administrators & Supervisors, AFSA, AFL-CIO v Detroit Bd of Ed,* 229 Mich App 54, 69, n 5, and 76 (JANSEN, J., dissenting); 580 NW2d 905 (1998). In that case, however, which required analysis of an unfair labor practice charge alleging an employer's improper unilateral change of work hours, the panel determined that the hours of work at issue were *not* overtime. Because the panel did not address a direct challenge to the validity of the general proposition, we do not consider ourselves bound by the brief citations.

Further, the specific challenge in this case is critically grounded on the effect GRCC's action had on the overload distribution process that was extensively addressed by the parties' bargaining agreement. This case, therefore, involves what is arguably a subissue of the broad concept of overtime. Our resolution of the instant controversy is tailored to this narrower issue, an issue not faced by this Court in *Detroit Bd of Ed,* nor by the MERC in any of the referenced decisions.

appropriate bargaining status to be assigned to GRCC's specific action.

Initially we note that both parties assert that the determination of the total number of overload hours to make available each semester is entirely within the purview of GRCC. We agree that this issue must be considered a permissive subject. As our Supreme Court has identified, where the employer's action clearly constitutes educational policy there is no bargaining obligation. *Bay City Ed Ass'n, supra.* Here, the number of overload hours available each semester is essentially a function of GRCC's decisions regarding what and how many classes to offer. This number will necessarily vary from semester to semester on the basis of student enrollment and course election, and the determination how to structure the curriculum must remain within the management prerogative. Both parties also acknowledge that Michigan cases have long included overtime pay within lists providing examples of mandatory subjects of bargaining. See *Central Michigan Univ Faculty Ass'n v Central Michigan Univ*, 404 Mich 268, 278; 273 NW2d 21 (1978); *Detroit Police Officers Ass'n, supra* at 55. The issue over which the parties differ, the issue we must decide today, is which bargaining status category should be applied to the decision to impose a cap on total teaching hours available to individual faculty members, a decision that thus restricts the opportunity of individual faculty members to take on overload hours under a bargained-for allocation process.

Our courts have articulated a test to guide the case-by-case determination whether a particular issue is a mandatory or permissive subject of bargaining:

> Any matter which has a material or significant impact upon wages, hours, or other conditions of employment or which settles an aspect of the relationship between employer and employee is a mandatory subject, except for management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security. [*West Ottawa Ed Ass'n, supra* at 322.]

The MERC decision and order states:

> Whether the issue is cast in terms of a limitation on the total number of hours of overtime available to the bargaining unit in the aggregate or as a restriction on the number of overload hours each individual faculty member may work, we believe the decision falls within the "core of entrepreneurial control," and is not a mandatory subject of bargaining.

We conclude that it is this statement, the crux of the MERC's decision, that presents a substantial and material error of law. MCL 24.306(1)(f); MSA 3.560(206)(1)(f). The MERC's statement, though differently focused, appears to affirm the hearing referee's comment that "the working condition, the right of faculty to be assigned overload teaching hours, must be distinguished from the permissive subject of bargaining, the right of the College to determine how many overload hours will be assigned to individual teachers." Contrary to the latter portion of each of these statements, we hold that under the circumstances of this case GRCC's imposition of a cap on total teaching hours, which thus restricts the amount of overload a particular faculty member may work, constitutes a mandatory subject of bargaining.

GRCC's appellate analysis of the issue primarily relies on the syllogism that overtime is an issue

outside the basic employment relationship; the matter of individual restrictions relates to overtime; thus, this matter neither has a material or significant effect on wages, hours, or other conditions of employment nor settles an aspect of the relationship between employer and employee. The FA counters that both the MERC's and GRCC's analysis of the issue, each based only on the general proposition of the MERC decisions that overtime is outside normal work, rest on an overly broad perspective where the decision restricting individual overtime directly affects a bargained-for distribution process. The FA argues that this situation is more appropriately analogized to those cases in which courts have found that while an initial decision to promote, lay off, or reorganize was permissive, the effect of such a decision presented a mandatory subject requiring bargaining.

In *Ishpeming Supervisory Employees' Chapter of Local 128 v Ishpeming*, 155 Mich App 501; 400 NW2d 661 (1986), this Court held that although the decision of an employer to eliminate jobs pursuant to a reorganization plan was within the scope of management prerogative and a permissive subject of bargaining, the effect of that decision, such as the ensuing determination of which specific employees to lay off, was a mandatory subject over which the union could bargain. *Id.* at 511. As noted in *Ishpeming*, our Supreme Court had previously reached a similar holding in *Local 1277, supra*. There, the Court found that a clause adopted by an arbitration panel, pursuant to which union-represented employees could be laid off only in conjunction with layoffs or cutbacks in other departments, severely restricted the city in its ability to function effectively. *Local 1277, supra* at 660. The

Court held that the city's ability to make the initial decision concerning the layoff of police officers was a permissive subject, but that there clearly existed a duty to bargain over the effect of that decision. *Id.* at 661. In an even earlier decision, which implicitly acknowledged the management prerogative regarding who to promote under the terms of the city charter, this Court similarly held that the standards and criteria for promotion were a mandatory subject of bargaining. See *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 494; 233 NW2d 49 (1975).

The hearing referee, though obviously disagreeing with the FA's contention, did recognize the principle the FA asserts. The hearing referee stated:

> In this case, overload was a matter covered extensively by the contract . . . . Normally, such benefits cannot be unilaterally changed after expiration of an agreement until impasse is reached. I find, however, where the benefit is a permissive subject of bargaining no advance bargaining is necessary before making a change, although the effects of the change may be bargainable.

The MERC also referenced this principle, likewise concluding that the action of imposing an individual cap on total teaching hours, thus restricting overload, constituted an initial decision requiring no bargaining. Contrary to GRCC's argument that we adopt the perception of the hearing referee and the MERC, and in accord with the contention of the FA, we find that GRCC's imposition of individual restrictions is more appropriately viewed as related to the effect of what was a permissible initial decision establishing the total available overload hours.

As noted above, establishment of the total available overload hours, almost guaranteed to vary from

semester to semester, is unquestionably a policy decision falling under the umbrella of permissive bargaining subjects. *Bay City Ed Ass'n, supra*. GRCC's decision to cap individual teaching hours, however, has little or no relationship to that overriding policy determination because the total available overload hours will instead always be determined by the factors previously described. In contrast, where before GRCC's action allocation of the total overload hours available each semester was made pursuant to a detailed, bargained-for process that was based on seniority and voluntary election of hours, the imposition of an individual cap on total teaching hours, though not altering the process, has a direct effect on and relationship to the application of the process. While senior faculty members could previously remain in the selection pool indefinitely, continuing to take on overload teaching hours as available, under the imposed cap on total teaching hours faculty members are removed from the pool when they reach their individual limit. Application of the process continues until all available hours are allocated; however, the pool decreases automatically instead of on a voluntary basis.

GRCC's argument, premised on the line of MERC opinions cited above, is that because overtime is considered voluntary work in addition to the normal workload, the instant action of individually capping total teaching hours cannot be found to fall under the requirement of subsection 15(1) of the PERA that an employer bargain in good faith with the union representative over "wages, hours, and other terms and conditions of employment . . . ." However, the principle that overtime-related issues are beyond the bar-

gaining requirement has at least one exception. As noted, it is well established that the rate of pay for overtime is a mandatory subject of bargaining. *Central Michigan Univ, supra.* The MERC decision and order indicates that the existence of such an exception is of no moment, stating:

> There is fundamental difference, however, between reducing the rate of pay for overtime work and limiting the number of overload hours available to unit members. While both decisions may have an impact on "wages, hours and other terms and conditions of employment," it is only the latter which we consider part and parcel of the Employer's right to regulate and control its operations.

The MERC fails to explain this reasoning, however, and given the particular circumstances of this case, including the just-described ramifications of GRCC's action on the contractually established allocation process, we disagree with such a conclusion.

While the individual cap on total teaching hours has a direct and potentially significant effect on particular faculty members, just as would a change in the overtime pay rate, unlike adjustment of the total available overload hours the individual cap on total teaching hours has no clear relationship to GRCC's regulation of its operations. We first note that there is no clear economic relationship. In the usual situation a business pays overtime at a higher rate as a tradeoff for accomplishing work sooner. Thus, a decision to limit total available overtime is recognizable as a cost-saving measure. The same principle would apply to GRCC with respect to a decision not to offer certain classes, which would naturally limit the total available overload hours. Here, however, the imposition of an individual cap on total teaching hours saves no

money. Rather, the identical expense is carried by GRCC, but potentially distributed in a wider pattern. Moreover, here the record indicates that unlike normal overtime payment, the rate of pay bargaining unit faculty members receive for overload hours is less than that which they receive for their regular teaching load. Part-time faculty, who take on any classes remaining in the event all bargaining unit faculty members drop out of the overload pool, are actually paid at a rate higher than the full-time faculty's overload rate. Thus, the effect of an imposed limit that stops willing bargaining unit faculty members from continuing to take on overload hours could, in the event enough others drop out at early stages, result in GRCC paying increased wages in order to fully staff the total number of offered classes.

The second potential relationship between this action and GRCC's management prerogative presents a trickier issue. During oral argument GRCC indicated that the cap on total teaching hours resulted from a concern that quality of instruction declined as teaching hours increased, contending that on such a basis this Court should find the decision to be within the management prerogative. While we acknowledge that the record contains evidence that this concern was raised on various occasions through the years, and that the hearing referee briefly mentioned this fact in his decision and recommended order, we note that neither the hearing referee nor the MERC relied on this issue in reaching a decision. It is equally apparent from the record, and from the lack of emphasis in GRCC's appellate brief, that despite its oral argument reference to this issue, GRCC has never seriously attempted to justify the action taken by claiming a

management prerogative to ensure quality of instruction. Although we see greater potential merit in this issue than in any other claim herein raised, given the dearth of reliance on this point and the lack of any empirical evidence, we find no basis on which to veer from the path we follow in this analysis. On this record, we find that an alleged concern for the quality of instruction is insufficient to establish the imposition of an individual cap on total teaching hours as within the management prerogative.[3]

In conclusion, we reiterate that before today no Michigan court has directly addressed the issue of the bargaining status of overtime under the PERA. Notwithstanding the averred authority of previous MERC opinions, we find that painting the issue with the broad stroke applied in those opinions fails to account for the complexity of the precise question herein presented. Therefore, contrary to the arguments of respondent GRCC, we decline to blindly apply the general proposition found in those opinions, pursuant to which it appears that the MERC would hold all overtime issues, except pay, beyond the basic employment relationship and thus permissive subjects of bargaining. Instead, after consideration of the unique circumstances presented by this use of "overtime" in a collegiate teaching situation, we hold that because the decision directly affects application of a bargained-for allocation process by which total availa-

---

[3] We leave for a more appropriate case determination of the issue whether under circumstances similar to those herein presented, including the existence of a bargained-for allocation process, an empirically established concern for the quality of an employee's work product may support an employer's imposition of this type of individual cap restricting overtime. We also note that like questions could be raised with regard to other performance-based issues, such as employee safety or productivity.

ble overload hours are distributed, GRCC's imposition of a cap on the number of total teaching hours bargaining unit faculty members can accept presents a mandatory subject of bargaining. Accordingly, we reverse the decision of the MERC.

Before the hearing referee, GRCC raised additional defenses to the FA's unfair labor practice charges. Because the hearing referee considered the issue of bargaining status dispositive, these additional defenses were not considered by either the hearing referee or the MERC. We accordingly remand to the MERC for appropriate further proceedings and consideration.

Reversed and remanded. We do not retain jurisdiction.